PETER MALCHAK, Plaintiff, *v.* METROPOLITAN LIFE INSURANCE COMPANY, Defendant.

Supreme Court, Broome County, August 10, 1929.

*S. Mack Smith*, for the plaintiff.

*Jenkins, Deyo & Hitchcock*, for the defendant.

SENN, J. The action is on a life insurance policy of $1,000 issued by the defendant on the life of Mary Malchak, wife of the plaintiff, the beneficiary named in the policy.

The application was dated on December 10, 1927, and the date of the policy is December 20, 1927.

A copy of the application was attached to the policy as required by section 58 of the Insurance Law and so became a part of the contract of insurance. Mrs. Malchak died on March 10, 1928.

Aside from certain formal proofs, the plaintiff's case was based on the policy, it being conceded that due proofs of death were made by him to the insurance company after his wife's decease on blanks furnished by the defendant insurer.

The action was defended on the ground that the application contained representations, material to the risk, which were false and fraudulent.

In her application for insurance Mrs. Malchak, in response to questions, among other things stated in effect that her present condition of health was good; that she was last sick in February, 1926; that the nature of that sickness was childbirth at which she was confined in the Endicott-Johnson Hospital for six weeks; that during the past five years she had not been treated by any physicians except Endicott-Johnson physicians and only for child-birth on the occasion mentioned; that within the past five years she had not received treatment at any hospital or dispensary, except for childbirth; that she had never had any disease of the heart or kidneys and that she had never been told that she had any heart trouble.

These representations are claimed by the defendant to have been false and fraudulent in that at the time the application was signed Mrs. Malchak was suffering from serious heart and kidney disease for which she was then being treated by a physician or physicians and had been under such treatment for a considerable time and at frequent intervals, mostly by physicians and at medical dispensaries maintained by the Endicott-Johnson Company for the benefit of the families of their employees, of whom her husband was one, and that in addition she was several times treated by a Dr. Sheffield, who was not an Endicott-Johnson physician.

In the proofs of death two physicians made certificates. Dr. Schweinberger stated that the insured died March 10, 1928, from nephritis (uremia) with cardio vascular renal as a contributory or secondary cause; that the duration of her illness from his personal knowledge was eight months and from the history of the case given it was two years. Dr. Sheffield stated that the cause of death was nephritis (inflammation of the kidneys) and myocarditis (inflammation of the muscular substance of the heart) as a contributory or secondary cause; that she had been ill about two years and that

he had treated her on March 30, 1926, for nephritis and myocarditis. (The words in parentheses except the word " uremia " are mine.)

From the testimony of several physicians sworn on the trial, including Dr. Sheffield, who had treated her on two or three occasions beside that mentioned in his certificate, it appeared that deceased had for about two years prior to her death been under very frequent treatment by physicians for illness other than childbirth.

It was quite evident from all the other circumstances in the case that they were treating her for serious organic trouble, probably that of which she died, but objections under section 352 of the Civil Practice Act prevented them from testifying to the specific disease for which they had treated her.

There were other proofs on the part of the defendant which I need not enumerate. The undisputed evidence in the case leaves little room for doubt that at the time when she signed the application the insured was not well, that she had serious organic disease whether of the kidneys or heart or both, and being under practically continuous treatment for the same, she must have known it.

At the time of the trial the court was impressed with the fact that the insured was an ignorant woman of foreign birth, unable to read in the English language and not able to write her name in any language; that on account of the small spaces provided, the agent of the insurance company who filled out her application, himself of Slavic origin, may have unduly abbreviated the answers and that she may have been and probably was ignorant of their meaning.

According to some authorities, if the misrepresentations were due to the agent setting down the answers of the applicant wrong, his acts, as representative of the company would estop it from availing itself of that defense (*Moore* v. *Prudential Casualty Co.,* 170 App. Div. 849, 854), but the *Moore* case and others of similar import seem to have been superseded by *Kwiatkowski* v. *Brotherhood of American Yeomen* (243 N. Y. 394), where it is held that the plaintiff, having accepted and retained the contract, with the application appended, is bound by it; that before accepting it she should have had it read over by some one in whom she had confidence. Under this decision it is the plaintiff who is estopped from asserting that because the insured could not read or write, she did not or may not have given or known the answers which were written down.

It was held by the Appellate Division in the Second Department that in case of false and fraudulent representations in an application

for insurance, in an action on the policy, the beneficiary is estopped from alleging and proving that the insurance agent and the medical examiner for the company were both aware of the true facts and that those facts were not stated in the application. (*Grubiak* v. *John Hancock Mutual Life Ins. Co.*, 212 App. Div. 126.)

Perhaps it cannot be said as matter of law that Mrs. Malchak knew that she had heart disease or kidney disease, but if, as was conclusively shown, she actually had them and was treated for them, that fact constituted a defense to the policy even though the misrepresentation in that respect was innocently made. (*Eastern District Piece Dye Works* v. *Travelers Insurance Co.*, 234 N. Y. 441, 450.)

The rule is perhaps harsh as applied to this case but on the whole is salutary, because a contrary rule would afford too great an incentive to pleas of ignorance on the part of persons signing applications for insurance.

It has been held in many cases that a false statement as to whether the applicant has consulted or been attended or treated by a physician is material to the risk and will defeat a recovery, especially when warranted to be true. (*Tunnard* v. *Supreme Council, etc.*, 201 App. Div. 746, 748.)

It is true that treatment for a mere indisposition does not constitute medical treatment within the meaning of the contract; that the attendance must have been for some substantial disorder and not a mere functional and temporary indisposition, and that it is a question for the jury to determine whether the ailment for which the insured was treated was of that character. (*Tunnard* v. *Supreme Council, etc.*, *supra*.)

The plaintiff contends that it was a question of fact for the jury to say whether Mrs. Malchak had consulted or been treated by a physician within the meaning of the application. Under ordinary circumstances this would be true.

In *Nawak* v. *Brotherhood of American Yeomen* (249 N. Y. 78) the applicant for insurance had stated that she had never consulted a physician, whereas in fact she had been attended by a woman physician. For what purposes or complaint did not appear although there was an attempt to show it was for constipation. It was held error for the trial court to dismiss the complaint on this bare fact; that the question did not " require the assured to recall the occasion of every illness, great or little, * * * every headache or cold * * * when a physician had prescribed for her a cathartic, a quinine pill or other simple remedy."

The court cited *Cushman* v. *U. S. Life Ins. Co.* (70 N. Y. 72)

where the assured had stated that he never had a disease of the liver, although on several occasions he had been treated for congestion of the liver, which was the malady from which he died. In that case the court distinguished between merely temporary disorders or functional disturbances and diseases having a bearing on general health or continuance of life, Judge EARL saying that " colds are generally accompanied with more or less congestion of the lungs and yet in such a case there is no disease of the lungs which an applicant for insurance would be bound to state."

" In construing a policy of life insurance it must be generally true that, before any temporary ailment can be called a disease, it must be such as to indicate a vice in the constitution, or be so serious as to have some bearing upon general health and the continuance of life, or such as according to common understanding would be called a disease." (*Cushman* v. *U. S. Life Ins. Co., supra.*)

According to common understanding there is a very essential difference between functional diseases which do not necessarily affect the general health, and kidney disease and heart disease, especially the latter, which must necessarily have an important bearing on general health and probable longevity.

The proofs submitted by the plaintiff are competent evidence as against him, especially when he sues in his individual capacity as beneficiary under the policy. (*Vecchio* v. *Metropolitan Life Ins. Co.,* 224 App. Div. 301, 303; *Klein* v. *Prudential Ins. Co.,* 221 N. Y. 449, 454.) " Unexplained it would have been conclusive * * * but when explained it lost its significance, provided the jury accepted the explanation." (*Spencer* v. *Citizens Mutual Life Ins. Assn.,* 142 N. Y. 505, 510.)

In this case there was no evidence tending to explain the statements of the physicians, submitted with the proofs, or to contradict the testimony of those who were sworn for the defendant.

In view of the overwhelming preponderance of the evidence for the defendant it seems clear to me that there was no question of fact which should have been submitted to the jury and that the motion to set aside the verdict must be granted.

Submit order.