IRENE SHREEVE WOODWORTH, individually and as Executrix, etc., of CHAUNCEY C. WOODWORTH, Deceased, and Others, Plaintiffs, *v.* PRUDENTIAL INSURANCE COMPANY OF AMERICA, Defendant.

Supreme Court, Special Term, New York County, May 25, 1939.

*Harry B. Solow*, for the plaintiffs.

*Solon Weit [Benjamin Paul Goldman* of counsel], for the defendant.

COTILLO, J. Plaintiff seeks by this action rescission of a life annuity contract purchased on May 1, 1936, by plaintiff's testator as the annuitant, and also the return of the $100,000 premium paid by the annuitant, less the aggregate amount of annuity payments received by the annuitant prior to his death which occurred on July 15, 1937. Rescission is sought upon the ground of unilateral mistake by the annuitant as to a material fact, it being alleged in the complaint that at the time of the purchase of the contract, the annuitant was suffering from grave diseases of which he

was then unaware and which resulted in his death upon the date stated; and that had the annuitant been aware of his ailments, he would not have purchased the contract or paid the consideration therefor.

An annuity contract is no more sacred than any other contract. It is not *sui generis* in the sense that it is free from the application of equitable principles generally applicable to all other contracts. If execution of the contract was induced by unilateral mistake on the part of the annuitant and without negligence on his part as to a material fact resulting in unjust enrichment to the company, the contract will be rescinded and the parties restored to *status quo* provided no prejudice result to the company as a result of change of position. (*Seidman* v. *New York Life Ins. Co.*, 162 Misc. 560; affd., 279 N. Y. 620; *Rosenblum* v. *Manufacturers Trust Co.*, 270 id. 79.)

The complaint here alleges a mistake on the part of the annuitant as to his state of health at the time of the purchase of the annuity contract. Clearly misapprehension as to an existing physical condition constitutes a mistake of fact. (*Dominicis* v. *United States Casualty Co.*, 132 App. Div. 553; *Seidman* v. *New York Life Ins. Co., supra.*) The question here presented is whether the fact as to which the annuitant was mistaken, namely the state of his health at the time of the purchase of the contract, was a fact material to this annuity transaction. To justify a decree of rescission " the fact concerning which the mistake is made must be material to the *transaction*, affecting its *substance*, and not merely its incidents; and the mistake itself must be so important that it determines the conduct of the *mistaken party or parties.*" (Italics supplied.) (2 Pomeroy's Equity Jurisprudence, [4th ed.], p. 1747, § 856.)

Manifestly, the annuitant's physical condition at the time of the purchase of the annuity was an element material to the transaction. It vitally affected the very substance of the thing contracted for. What the annuitant was purchasing was a quarter-annual annuity of $1,571 payable only *so long as he lived.* If he died, not only would the payments cease, but his own $100,000 would be forfeited to the defendant. In brief, the annuitant's benefits under this contract were dependent upon the duration of his life and therefore his then condition of health went to the essence of the very object in view. It was a material fact intrinsic to the contract

Moreover, the materiality of an annuitant's state of health in relation to an annuity contract is apparent from the fact that the consideration for the contract and the amount of each annuity installment are computed upon the basis of average *life expectancy* as disclosed by Standard Mortality Tables. It is futile to argue

that health is immaterial to a contract founded upon considerations of life expectancy.

In the final analysis there is no distinction between an annuity contract and a life insurance contract as respects this question of materiality. The health of an annuitant affects the substance of an annuity contract as materially as the health of an assured affects the substance of a life insurance contract. The only difference between the two contracts is that in the case of insurance, the liability of the company accrues upon death whereas in the case of annuity, it ceases upon death. In either case, *death determines the contract.* In either case the consideration or premium for the contract is computed upon the basis of Standard Mortality Tables. In the case of insurance, the company is the one interested in knowing that the health of the assured is normal and before entering into the contract, will usually take the precaution of a medical examination and select its risks. The premium however, is still computed upon the basis of *average* life expectancy as disclosed by Standard Mortality Tables. In the case of an annuity, the annuitant is the one who is interested and if he is cautious will usually first obtain his own medical examination. But in both contracts *death is the contingency provided for.* In both cases, *death is the factor which ultimately determines the contract.* The occurrence of that contingency merely affects the parties in each case conversely.

In the case of insurance, death results in the loss to the company. In the case of annuity, death results in the loss to the annuitant. But the inherent nature of the contract is in both cases the same.

Now it is settled by an abundance of authority, that in the case of a life insurance contract, the physical condition of the assured *is* material to the transaction. The question of materiality has arisen most often in cases where the company has sought to avoid an insurance policy upon the ground that the assured's misrepresentation as to his state of health was a misrepresentation *as to a material* fact. Consistently in those cases the courts have held that the state of health of the assured is material and that a misrepresentation in regard thereto is sufficient to defeat a claim upon the policy. (*Jenkins* v. *John Hancock Mut. Life Ins. Co.,* 257 N. Y. 289; *Minsker* v. *John Hancock Mut. Life Ins. Co.,* 254 id. 333.) The theory underlying the decisions is, that since the contract is to be determined upon death, the probable duration of the life insured, bears upon the risk to be taken by the company, and in that connection, the condition of the health of the assured is material. (*Cushman* v. *United States Life Ins. Co.,* 70 N. Y. 72, 76, 77; *Anderson* v. *Ætna Life Ins. Co.,* 265 id. 376; *McMartin* v. *Fidelity & Cas. Co.,* 264 id. 220; *Samson* v. *Metropolitan Life Ins. Co.,* 248 App. Div. 833.)

The theory can be no different with respect to an annuity con-

tract merely because the loss upon death is that of the annuitant rather than of the company. The probable duration of the life of the annuitant with equal force bears upon the risk to be taken by the *annuitant* and in that connection, the condition of his health is equally material.

If the annuitant had applied for an insurance policy instead of an annuity contract, he would have been required to file application containing representations as to his then state of health. Suppose in such case the annuitant had stated in his application that he was not suffering from any constitutional disease as he then actually believed the fact to be. Suppose the company issued the policy relying upon that representation. Suppose the annuitant then died from a pre-existing disease within the short period disclosed by the complaint, and the company then ascertained that the annuitant had had the disease when the policy was written. In that case, there would be no liability on the part of the company. The company could avoid the policy on the ground of misrepresentation as to a material fact *even though such misrepresentation was innocently made.* (*Geer* v. *Union Mutual Life Ins. Co.,* 273 N. Y. 261; *Eastern District P. D. Works* v. *Travelers Ins. Co.,* 234 id. 441; *Malchak* v. *Metropolitan Life Ins. Co.,* 134 Misc. 640.)

The case of *Malchak* v. *Metropolitan Life Ins. Co.,* (*supra*) presented just such a state of facts and there the court said: " Perhaps it cannot be said as matter of law that Mrs. Malchak knew that she had heart disease or kidney disease, but if, as was conclusively shown, she actually had them and was treated for them, that fact constituted a defense to the policy, *even though the misrepresentation in that respect was innocently made.* (*Eastern Dist. Piece Dye Works* v. *Travelers Ins. Co.,* 234 N. Y. 441, 450.)"

Justice requires that the rule work both ways. True it is that in the cited cases involving insurance policies, the basis for avoidance was *misrepresentation* as to a material fact, while here the basis urged is *mistake* as to a material fact. But in the final analysis, what is a misrepresentation, except a mistake, especially if it be innocent?

" Fraud and mistake as grounds of relief are alike founded on ignorance. There can be no mistake where there is no ignorance; there can be no fraud where there is no mistake." (Kerr on Fraud & Mistake [1929], [6th ed.], p. 1.)

" Fraud works legal consequences because it induces mistake on the part of the person defrauded; and honest misrepresentation when it produces legal consequences, does so for the same reason.

" Therefore the term mistake might well be used inclusively to cover all kinds of mental error, however induced." (3 Williston, Law of Contracts [1920], p. 2736, § 1540.)

It follows, therefore, that the same doctrine which impels the court to avoid an insurance policy at the behest of the company, upon the ground of innocent *misrepresentation*, as to a material fact, must impel the court here to avoid the annuity contract, at the behest of the annuitant or his representative, upon the ground of *mistake* (equally innocent) as to the same material fact.

"As occasions for the exercise of equitable jurisdiction and for the granting of equitable relief, *fraud and mistake stand upon exactly the same footing;* their effects upon the rights of the injured party are the same; the necessity which they create for relief is the same; * * *. Whatever power, therefore, courts of equity possess to prevent and remove the consequences of fraud, they also possess in dealing with effects of mistake." (2 Pomeroy's Equity Jurisprudence [4th ed.], p. 1782, § 867 [note].)

The court is not unmindful of the fact that because the consideration for the contract was computed upon the basis of average expectancy of life as disclosed by Standard Mortality Tables, it was *prima facie* fair and adequate. Nevertheless if the facts alleged in this complaint are established by proof upon the trial, the presumption of adequacy would be overcome and a showing made of gross inadequacy of consideration on the part of the defendant. And while generally mere inadequacy of consideration is insufficient to avoid a contract, the rule is, that if it is so gross as to offend the conscience of the court or if it is *coupled with mistake* or fraud, relief will be granted. (*Parmelee* v. *Cameron*, 41 N. Y. 392, 396.)

Moreover, the fact that the contract here was executed by mistake cannot place the defendant in a better position than it would occupy if the contract had been entered into with knowledge of all the facts. (*Duncan* v. *New York Mut. Ins. Co.*, 138 N. Y. 88, 93.) Now, if the defendant here had known that the annuitant was afflicted with a constitutional disease and that his life expectancy was less than two years and had nevertheless issued this contract for a consideration computed upon *average* expectancy of nineteen years for individuals of annuitant's then age, it is clear that no court would permit so unconscionable a contract to stand. The courts condemn such contracts on the ground that they are bargains " such as no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other." (*Hume* v. *United States*, 132 U. S. 406; *Roux* v. *Rothschild*, 37 Misc. 435; affd., 78 App. Div. 637.)

If the facts here alleged in the complaint are established on the trial no prejudice will result to the defendant by restoring the parties to *status quo*. The defendant will merely be deprived of the benefit of the annuitant's mistake, a benefit to which it was never entitled. (*Harper, Inc.*, v. *City of Newburgh*, 159 App. Div. 695; *Seidman* v. *New York Life Ins. Co., supra.*)

The case of *Rishel* v. *Pacific Mut. Life Ins. Co.* (78 F. [2d] 881) is not controlling here. No question of mistake was there involved. It was not alleged in the complaint there, that the annuitant did not know the condition of her health. On the contrary, it was specifically alleged that at the time of the purchase of the annuities, she was expecting to undergo a major operation and it appeared that she purchased the annuities *despite* knowledge of her ailments. It was a case where rescission was sought upon the ground among others of inadequacy of consideration *not* coupled with mistake, it being alleged merely that by reason of her ailments, the life expectancy of the annuitant was less than the average. Had such allegation been coupled with an allegation, such as here, that the annuitant was unaware of her physical condition, a different result might have followed.

The recent decisions of the United States District Court for the Southern District of New York in *Woodworth* v. *Travelers Insurance Co.* and *Woodworth* v. *Connecticut Mutual Life Ins. Co.*, dismissing complaints similar to that here involved, rested upon the authority of the *Rishel* case, but the distinction hereinabove demonstrated between that case and the instant case seems to have been overlooked, and this court feels constrained not to follow those decisions.

In the recent case of *Davis* v. *Equitable Life Assurance Society* (280 N. Y. 656), the complaint was somewhat similar to the one in the case at bar. There, likewise, rescission was sought upon the ground of unilateral mistake on the part of the annuitant as to his state of health, but the complaint there was dismissed after trial, at the close of the plaintiff's case, apparently *for failure of proof*. The trial court there found that the annuitant at the time of the purchase of the contract was ignorant of the fact that he was suffering from a disease, but there was no finding to the effect that the annuitant would not have purchased the contract had he known of his physical ailment. In this complaint it is alleged that had the annuitant been aware that he was suffering from a constitutional disease, he would not have purchased the contract or paid the consideration therefor. The court is of the opinion that if such fact be established upon the trial, rescission will lie.

It is not to be denied that the contract was executed in contemplation of the fact that the annuitant might not survive the period of average life expectancy of individuals of his then age — that the annuitant took the risk that he might die shortly after the execution of the contract — and if accident or sudden illness rather than a *pre-existing* disease had caused his death on July 15, 1937, there would be no basis for this action. But it is likewise reasonably to be inferred that the parties, while speculating as to the

uncertainties of the future, assumed that at the time of the execution of the contract the annuitant was in normal health and had an expectancy of life equal to the average, an inference warranted by the fact that the consideration for the contract was computed on that basis. The complaint here alleges that in that assumption, the annuitant at least was mistaken.

It would seem almost a reproach to our jurisprudence if equity shall be compelled to confess itself helpless in the circumstances here pleaded. If the proof sustains the allegations of the complaint, no injury will result to any one by the granting of the relief here asked. To refuse it will entail upon the annuitant's estate a loss of $100,000, a penalty so unconscionable as to be repugnant to those principles of natural justice which are the foundation of all law.

The motion for reargument is granted and upon such reargument the original decision denying the motion to dismiss the complaint is adhered to.