GIUSEPPE COLLI *vs.* CROWN PIECE DYE WORKS.

JANUARY 23, 1936.

PRESENT: Flynn, C. J., Capotosto, and Condon, JJ.

CAPOTOSTO, J. This is a petition for relief under general laws 1923, chapter 347, filed in this court within one year after the entry of a final decree in the superior court in a proceeding under the Workmen's Compensation Act. The petitioner prays for a new trial on the ground that he is aggrieved by a decree of the superior court entered July 28, 1933, from which he failed to appeal on account of accident, mistake and unforeseen cause.

The petitioner, a laborer of Italian extraction, was employed by the respondent at its mill in the city of Woonsocket. On July 3, 1931, he suffered a hernia as the result of lifting heavy rolls of cloth while in the performance of his duties. A preliminary agreement for compensation under the terms of the Workmen's Compensation Act was approved by the commissioner of labor on February 16, 1932, and an agreement of final adjustment was approved by him on April 4, 1932.

By the middle of March, 1932, the petitioner resumed his regular occupation in the respondent's employ and continued at his work until January 3, 1933, when he claims to have suffered a recurrence of the hernia from lifting a truck laden with wet cloth. On June 20, 1933, he filed a petition in the superior court to review the preliminary and final agreements above described and prayed for further compensation in accordance with the terms of the act. The respondent in its answer to this petition for review contended that if the petitioner was suffering from any incapacity it did not result from the injury of July 3, 1931, but was

due to a new accident. The matter was heard by a justice of the superior court on July 12, 1933. The respondent introduced no testimony at this hearing. It strongly urged, however, that the evidence of the petitioner and his doctor established that the incapacity then under consideration was due to a new accident and was not a recurrence of the original injury. The trial justice found in favor of the petitioner and awarded him extra compensation in the sum of $216. A decree was accordingly entered in the superior court on July 28, 1933, and the petitioner received that sum. It is this decree that the petitioner seeks to open by his present petition. A short time later the petitioner, who claimed that he was still totally incapacitated, changed counsel and engaged an attorney who understood and spoke Italian. On November 14, 1933, this attorney filed an original petition with the commissioner of labor alleging that the injury of January, 1933, was due to a new accident.

The testimony taken thereon at a hearing before the commissioner of labor is a part of the record before us. We have carefully examined this testimony in order to be sure that the petitioner had not intentionally and for improper purposes changed his testimony as previously given by him in the superior court. We find nothing that impugns his good faith. The petition was dismissed by the commissioner of labor on the strength of the decree entered July 28, 1933. From this ruling an appeal was taken to the superior court where it was subsequently heard and decision was reserved by the trial justice. The transcript of the testimony in the superior court is not before us, due to the fact that the petition there pending was discontinued before decision upon the filing of the present petition in this court.

In the instant cause the sworn petition alleges that on July 3, 1931, the day when the petitioner was first injured, the respondent was insured by the Employers' Liability Insurance Company and that on January 3, 1933, it was insured by the Metropolitan Casualty Insurance Company; that when the petitioner claimed further relief under

the act for his injury of January 3, 1933, a dispute arose between these two insurance companies as to which one was liable for any compensation that might be due him; and that while this dispute was in progress, the Metropolitan Casualty Insurance Company, without prejudice to any of its rights in the premises, procured Dr. E. L. Myers to operate upon the petitioner.

The petition further alleges that prior to the operation by Dr. Myers, a Mr. Murdock, who represented the Metropolitan Casualty Insurance Company, suggested to the petitioner that, as his company was undertaking the financing of the operation, the petitioner should go to an attorney whom Murdock named, with a view of reopening the agreements for compensation that had been entered into with the Employers' Liability Insurance Company in 1932; that at the time, the petitioner informed Murdock that if he were to engage a lawyer, he wanted to engage one who spoke the Italian language so that he could better explain his difficulties; and that after the operation was performed, Murdock went to the petitioner's home, gave him the name and address of the attorney, again urged him to file his petition through that attorney, and told him that he would have nothing to worry about, because the Metropolitan Casualty Insurance Company would pay the attorney for his services.

The petition then sets forth that the petitioner, "being assured by said Murdock that he had nothing to lose since he would receive compensation from one company or the other" went to the attorney that Murdock suggested with the result that a petition to reopen the agreements with the Employers' Liability Insurance Company was filed and, on July 12, 1933, was heard by a justice of the superior court.

The instant petition further states that at this hearing, the testimony was confined only to the facts surrounding the alleged first and second accidents and that no questions were asked the petitioner "concerning his condition at the time of the trial;" that, although the petitioner informed

the attorney that Dr. Virgilio M. Bertone had attended him between the time of the operation and the hearing, Dr. Bertone was not called as a witness through some mistake and misunderstanding; that no inquiry was made of Dr. Myers, who was the only medical witness at the hearing, as to whether the petitioner had fully recovered and was then able to follow his usual occupation.

Affidavits of Dr. Myers and Dr. Bertone were filed in support of the petition before us. That part of Dr. Myers affidavit which refers to the petitioner's present condition, or to what his testimony would have been at the hearing in July, 1933, had he been asked, is without force and effect in determining the question here. A retrospective view of testimony or of the conduct of a trial that reveals omissions, which could have been supplied to advantage, can not make such omissions the basis of a claim for a new trial on the ground of accident, mistake, or unforeseen cause.

We will consider Dr. Myer's affidavit, however, only in so far as it tends to establish the fact stated in the petition that the petitioner continued to treat with Dr. Bertone shortly after he, Dr. Myers, had performed the operation.

The affidavit of Dr. Bertone stands on a different footing. He was not a witness at the hearing in July, 1933, although he had attended the petitioner from shortly after the operation by Dr. Myers to the time of the hearing. His affidavit sets forth that "on July 12, 1933, the petitioner was totally incapacitated and unable to work at his usual occupation . . ."

Three affidavits were filed in opposition to the present petition. The first affidavit is by the attorney who represented the petitioner at that time. It sets out how he came to be engaged and what he did in the matter. This affidavit strongly corroborates the petitioner in that it admits that Murdock, an adjuster for the Metropolitan Casualty Insurance Company, requested the affiant to represent the petitioner and that he was in fact compensated for his services by that company. This affidavit admits that the

petitioner informed the attorney "that he had consulted Doctor Bertone" but it fails to give any reason why Dr. Bertone was neither consulted nor produced as a witness at the hearing.

The second affidavit is by Clarence Murdock, an adjuster for the Metropolitan Casualty Insurance Company, wherein he states that, in view of a dispute between the Employers' Liability Insurance Company and his company, he first tried to arrange a compromise whereby the two insurance companies might cooperate on some basis to take care of the disability of the petitioner; that when the Employers' Liability Insurance Company refused to make any payment whatever, he then agreed with the petitioner that Dr. Myers would perform the operation at the company's expense; and that after the operation was performed on February 11, 1933, the affiant suggested that the petitioner consult a lawyer and was told by the petitioner that he had no lawyer in mind, although he thought he might do better with one who understood Italian. From this point the affidavit reads: "I suggested to him that we would be willing to lay all the facts before any attorney and if the attorney decided to proceed on the basis of the first accident, we would cooperate with him." The affidavit then goes on to say that the affiant suggested the attorney; that he did not insist that petitioner go to him, but that he did highly recommend him as one who would give the petitioner proper advice; and that, thereafter, the petitioner made arrangements with this attorney to represent him. The affidavit closes by saying that at no time after the operation of February 11, 1933, did the affiant know that the petitioner was making any claim of further disability until he was informed of that fact by the petitioner's second attorney in the fall of that year and that, from his connection with the petitioner, the affiant "assumed he had recovered as a result of the operation of February 11, 1933." The affidavit gives no details as to the time, place or substance of any conversation that led Murdock to "assume" that the petitioner had recovered.

The third affidavit is by James B. Aldrich, another adjuster for the Metropolitan Casualty Insurance Company, wherein he states that he took charge of the petitioner's case after July 1, 1933, when Murdock severed his connection with the company, and that from his conversation with the petitioner, he "assumed" that the petitioner had recovered from the operation. Here again the details upon which such an assumption was based are conspicuously absent. The affidavit then goes on to state that at the hearing of July, 1933, neither he nor the Metropolitan Casualty Insurance Company "had any interest as to the extent of recovery, although we hoped that Colli would be successful in establishing that his disability had been due to the accident of July 3, 1931, rather than the accident of January 3, 1933." In the very next paragraph the affidavit sets out that after the hearing the affiant told the attorney that if there was any objection by the petitioner to pay for his services, he would recommend that the company pay the counsel fee in view of the fact that by his success in fastening liability on the Employers' Liability Insurance Company, the attorney had made it possible for them to close their file "without any payment of compensation." This is significant.

The affidavits before us have been reviewed with considerable detail, first, to show that the superior court, in the hearing of July, 1933, was without any knowledge of the real situation under which the petitioner appeared before it to litigate his claim; and, second, because they set out circumstances which, if permitted to become a practice, would seriously militate against the equitable adjudication of compensation cases and which could not be looked upon with favor.

The Workmen's Compensation Act is a remedial statute whose primary purpose is to secure to an employee, who is injured in the course of his employment, a reasonable weekly compensation from his employer. Its aim is to protect the employee and his dependents, to some extent at least, from

the consequences that ordinarily accompany a sudden stoppage of earning power. In such cases the injured employee looks solely to his employer for the benefits that the statute grants him for his particular injury and has no community of interests with anyone who, by contract, may agree with the employer to insure him against liability. Where an insurance company undertakes to insure the employer against liability under the act, the respective rights of an injured employee and of the insurance company are clearly inconsistent. An insurance company that furnishes such insurance is justified in protecting its interests in any lawful manner, but, in doing so it must not trespass upon the right of the employee to a full and independent presentation of his claim.

Since the decision in *Donahue* v. *Sherman's Sons Co.*, 39 R. I. 373, the words "accident, mistake or unforeseen cause," as used in chapter 347 of the general laws 1923, have been interpreted with some liberality, and have been regarded as broad and general words used in a remedial statute to enable this court, within proper limits, to avoid hardship and substantial misfortune. The intent of this chapter is to give to parties with honest claims and strong equities relief from the strict rules of law, whenever, in the exercise of its discretion, this court believes that justice requires, provided such relief can be granted without prejudice to the rights of the opposing party. *Benedetto* v. *Capone*, 48 R. I. 14. Whether or not a person is entitled to the assistance of the statute must of necessity depend upon the facts in each case

At the hearing of July 12, 1933, when the respondent did not see fit to present any testimony in its behalf, the trial justice found that the disability complained of by the petitioner was due to a recurrence of the injury of July, 1931. He, therefore, ordered the cause reopened and made certain allowances based on the testimony before him. A decree in accordance with this decision was duly entered on July 28, 1933, and no appeal was taken from that decree

by the respondent. This constituted a judicial and final determination as to the cause of the petitioner's disability, an issue that is no longer subject to adjudication. The petitioner's complaint in the petition before us is not directed to the cause of his injury but is directed to the fact that at the hearing in July, 1933, the extent of his injury and of his then existing incapacity was disregarded and was not brought to the attention of the court through no fault of his own. The transcript of the testimony given at that hearing and the facts disclosed by the affidavits support his claim. In view of the special circumstances in this case and for the reasons already stated by us, we are of the opinion that the petitioner has made out a case of an honest claim with strong equities that in justice warrants relief, to the extent of permitting him to present additional testimony to the superior court as to the extent of his injury and as to such further incapacity, if any, that naturally resulted therefrom, in addition to the findings in the decree of July 28, 1933.

The prayer of the petition is granted to the above extent and the cause is ordered reopened in the superior court and further proceedings ordered taken in accordance with this opinion. The decree of July 28, 1933, is otherwise affirmed.

*Pettine, Godfrey & Cambio*, for petitioner.
*Charles R. Haslam*, for respondent.