ARMSTRONG TIRE & RUBBER COMPANY, et al. *v.* FRANKS

No. 42091          January 22, 1962          137 So. 2d 141

794

*Laub, Adams, Forman & Truly,* Natchez, for appellant.

*Clyde W. Mullins,* Natchez, for appellee.

ETHRIDGE, J.

The main issue in this case is whether the Mississippi Workmen's Compensation Commission abused its discretion in reopening a compensation claim on the ground of a mistake in a determination of fact. Subsidiary

questions are concerned with the effect of a commuted lump sum payment, and a plea by the employer and insurance carrier that claimant was estopped to obtain a reopening. We hold that the commission was amply justified in reopening the claim and refusing to apply the doctrine of estoppel.

Appellee Earl Franks received on May 30, 1958, an accidental injury to his left arm, which arose out of and in the course of his employment for appellant, Armstrong Tire & Rubber Company. He received fractures of both bones of the lower left arm. Franks was paid temporary total disability benefits for sixty weeks. He was not able to use the left arm. It was totally disabled during this period and subsequently up to the time of the hearings in 1960.

The Mississippi Workmen's Compensation Act provides for a system of voluntary payments, unless the employer and insurance carrier controvert the claim. Miss. Code 1942, Rec., Sec. 6998-19; H. C. Moody & Sons v. Dedeaux, 223 Miss. 832, 79 So. 2d 225 (1955). All compensation benefits paid to Franks by appellants were voluntary. Franks was treated by Dr. G. S. Hicks, to whom the employer and insurance carrier had sent him. In addition, appellants sent claimant to two orthopedists, who recommended additional surgery on the arm. Dr. Hicks had previously operated, but there was not a fusion of one of the bones. He did not testify. Claimant said Dr. Hicks advised him against a further operation, stating that, if he would get a job, use of the arm and time would probably enable it to get better. Franks had a wife and three minor children, and during the treatment period of over a year, he became deeply in debt. He told the doctor about this condition. On July 24, 1959, Dr. Hicks made a final medical report (Commission Form B-27), which recited that claimant could return to work on that date, and he had a fifty per cent permanent residual disability of the left arm.

Accordingly, in August 1959 claimant and appellants signed a Form B-17, "Supplemental Agreement as to Compensation", which stated that claimant had reached a maximum recovery on July 24, 1959; that he had a fifty per cent permanent disability of the left arm; and that they agreed to pay and to accept compensation for one hundred weeks on that basis. On the bottom of that form, the commission's representative approved that statement. Appellants paid claimant permanent partial benefits for four weeks.

On August 27, 1959, Franks filed with the Commission a Form B-19, entitled "Application for a Lump Sum Settlement, Section 13, subsection (j), Chapter 354, Laws 1948". In it he applied for a commuted lump sum payment of his claim "to pay off accumulated indebtedness". On September 1, 1959, the commission made an "order authorizing lump sum settlement". It recited that one was warranted, and ordered it to be paid by the carrier to claimant, "in accordance with Section 13(j), commuted as provided by law."

Subsequently in September 1959, appellants filed with the commission a Form B-31, "Final report and settlement receipt". It stated that, pursuant to the order for a "lump sum settlement", less statutory discount, the carrier had paid Franks that amount based on fifty per cent permanent disability of the left arm. Franks signed this "final receipt".

■■■ It is well established under earlier decisions that the effect and purpose of a Form B-31 is not contractual. It constitutes notice to claimant that he is receiving his final payment of compensation, as required by Miss. Code 1942 Rec., Sec. 6998-19(g), and that the employer and insurance carrier consider the case closed. It begins the running of the one year statute of limitations in Sec. 21 of the act (Code Sec. 6998-27).

H. C. Moody & Sons v. Dedeaux, *supra;* Hale v. General Box Mfg. Co., 228 Miss. 394, 87 So. 2d 679 (1956).

Section 21 provides: "Upon its own initiative, or upon the application of any party in interest on the ground of a change in conditions or because of a mistake in a determination of fact, the commission may, at any time prior to one (1) year after date of the last payment of compensation, whether or not a compensation order has been issued, or at any time prior to one (1) year after the rejection of a claim, review a compensation case, issue a new compensation order which may terminate, continue, reinstate, increase or decrease such compensation, or award compensation. Such new order shall not affect any compensation previously paid, except that an award increasing the compensate rate may be made effective from the date of the injury, and if any part of the compensation due or to become due is unpaid, an award decreasing the compensation rate may be made effective from the date of the injury, and any payment made prior thereto in excess of such decreased rate shall be deducted from any unpaid compensation, in such manner and by such method as may be determined by the commission."

On November 6, 1959, Franks filed with the commission an application under Sec. 21 to reopen his claim for compensation. There was a hearing on this application, at which defendants offered no testimony, but introduced into evidence the forms discussed above which were executed by claimant, and the order authorizing a commuted lump sum payment on the basis of fifty per cent permanent disability to the left arm. Claimant's testimony is undisputed that he had a total permanent disability in the left arm. He, a co-worker, and his wife verified this. Two doctors who specialize in orthopedic surgery testified in his behalf to the same effect, namely, that he has a one hundred per cent dis-

ability in that arm for the same or similar employment. There is no dispute in the evidence on these facts. Therefore the attorney referee held that under Sec. 21 there had been a mistake in a determination of fact by the commission; and that appellants should pay claimant compensation for two hundred weeks for total loss of use of the left arm. The commission adopted the attorney referee's order and the circuit court affirmed the commission.

██ ██ *First.* The commission was amply warranted in finding that there had been a mistake by it in a determination of fact, and hence it was justified in reopening the claim under Sec. 21. It is within the sound discretion of the Commission to determine whether or not it will reopen a case. So long as its discretion is not abused, this Court will not interfere. West Estate v. Southern Bell Tel. and Tel. Co., 228 Miss. 890, 894, 90 So. 2d 1 (1956); Hudgins v. Marine Welding and Repair Works, 237 Miss. 301, 114 So. 2d 767 (1959). In short, if there is any reasonable basis upon which the Commission may have been justified in reopening under Sec. 21, its decision will be affirmed.

██ ██ In the instant case, the Commission manifestly had previously made a mistake in a determination of fact. It properly sought to correct that mistake. The doctor employed by appellants, and to whom they had sent claimant for treatment, erroneously made a final medical report stating that he had only a fifty per cent permanent disability of the left arm. Based on that final medical report, the Commission approved voluntary payments of fifty per cent disability. In addition, claimant then applied for a commuted lump sum payment under Sec. 13(j) of the act (Code Sec. 6998-19(j)), based upon the same percentage disability, and the Commission's order of September 1, 1959 approved it. Both of these actions of the Commission were manifestly mistakes by it in a determination of fact, namely, the

extent of the disability to claimant's left arm. All of the evidence in this record supports the commission's conclusion that these were such mistakes. Hence that agency was correct in rectifying those errors. ■■ ■ The purpose of Sec. 21 is to permit such corrections. See 2 Larson, Workmen's Compensation Law (1952), Secs. 81.00, et seq.; 100 C. J. S., Workmen's Compensation, Secs. 660, 661, et seq.; 58 Am. Jur., Workmen's Compensation, Secs. 499, et seq.; Anno. 121 A. L. R. 1270 (1939). 12 Schneider, Workmen's Compensation Law (3d ed. 1959), Sec. 2460.

In Roling v. Hatten & Davis Lbr. Co., 226 Miss. 732, 85 So. 2d 486 (1956), the attorney referee originally made a finding of fifty per cent disability to claimant's back. No appeal was taken from this order, and payments were made on that basis. About three years later, but within less than one year from the last payment of compensation, claimant filed a petition for re-determination of liability under Sec. 21. The commission found that claimant had a total, permanent disability. Its order was upheld by this Court. The Court said that "the statute is clear and unambiguous, and makes possible a determination or re-determination of the degree of the injury at any time short of the running of the period of limitation." See also Shainberg's Black & White Store v. Prothro, 238 Miss. 444, 118 So. 2d 862 (1960); Hale v. General Box Mfg. Co., 228 Miss. 394, 87 So. 2d 679 (1956); United Timber & Lumber Co. v. Dependents of Hill, 226 Miss. 540, 552, 84 So. 2d 921 (1956); Hill v. United Timber & Lumber Co., 221 Miss. 473, 73 So. 2d 247 (1954); Jackson Ready-Mix Concrete v. Young, 236 Miss. 550, 111 So. 2d 255 (1959); Dunn, Mississippi Workmen's Compensation Law (1957), Secs. 209-210.

In Clyde-Mallory Lines v. Cardillo, 22 F. Supp. 40 (D. C. Mass., 1938), the Court was concerned with the reopening provision of the Longshoremen's and Harbor Workers' Compensation Act, 33 U. S. C. A. Sec. 922,

which is similar to Sec. 21 of the Mississippi Act. It held that a deputy commissioner's finding of partial disability when in fact there was total disability was a mistake in a determination of that corrigible by a new order.

Colli v. Crown Piece Dye Works, 55 R. I. 494, 182 A. 490 (1956), involved a reopening of a compensation claim where the original award did not cover the full extent of disability. The Court found that there was no evidence which impugned claimant's good faith. It said that a reopening statute for mistake is regarded as a remedial act to enable the court to avoid hardship and substantial misfortune, and should be construed in the light of those purposes, in order to effectuate a just result.

These principles are applicable to the instant case. On this record it is undisputed that appellee has a total permanent loss of use of his left arm. To deny the commission power to reopen a claim and to correct its mistake in a determination of fact, under these circumstances, would have the effect not only of drastically limiting its power under Sec. 21, but of substantially frustrating the manifest legislative purpose.

■■ ■ *Second.* The Workmen's Compensation Act provides for commuted lump sum payments. Sec. 13(j), Code Sec. 6998-19(j). Whenever the Commission determines that it is for the best interest of a claimant, the liability of the employer may be discharged by the payment of a commuted lump sum. The commission shall be the sole judge as to whether a lump sum payment shall be to the best interest of the worker or his dependents. This is simply a mathematical computation of the present value of future payments. Although sometimes called a lump sum "settlement", Sec. 13(j) does not provide for a determination of the amount due by an agreement of the parties. It is not a compromise settlement. Claimant's application for a "lump sum

settlement" expressly stated that it was under Sec. 13(j). Appellants were not parties to this application. The commission's order approving the lump sum payment was also based upon Sec. 13(j). It assumes the existence of a particular obligation. The commission's rule B-15 recognizes this fact. It provides:

"In adopting the requirement for filing new forms B-15, B-17 and B-77, the Commission's sole purpose is to require promptness in the filing of certain desired data and to obtain confirmation from interested parties by their signatures thereon that they have notice of that data being on file with the Commission. Inasmuch as Section 13(a) of the Mississippi Workmen's Compensation Act, as amended, prohibits the Commission from making an award, except where liability to pay compensation is controverted, the forms (particularly B-15 and B-17) *are not intended to be a binding contract on the parties whose signatures appear thereon, or in the nature of an adjudication on the information set forth thereon, or an award by the Commission,* and the requirement for signatures on said forms *is not intended to affect the rights of said parties or to operate as a waiver or estoppel of any of their rights* to have a full and complete hearing on any matter arising under the Workmen's Compensation Act." (Emphasis added.)

A commuted lump sum payment under Sec. 13(j) is not a binding contract upon a claimant so as to preclude a reopening within the terms of Sec. 21. This is in accord with the provisions of Sec. 13(j). Appellants were not parties to the application for a 13(j) lump sum payment. The statute places that within the sole discretion of the commission. Moreover, the second sentence of Rule B-15 states that the commission's forms are not intended to be a binding contract on the parties, or to operate as a waiver or estoppel of their rights under the Act. See 99 C. J. S., Workmen's Compensa-

tion, Sec. 337. Promulgation of this rule was within the Commission's power. Code Sec. 6998-43.

On the other hand, a compromise settlement of a claim is dealt with in a separate section, for a different purpose, and with specific limitations. Sec. 9(i), Code Sec. 6998-15, provides that rules of the Commission shall govern compromise payments ''where the prescribed schedules are not applicable.'' The commission may approve a compromise settlement or payment in its discretion ''where it is not possible to determine the exact extent of disability, as for example in certain injuries to the back or head.''

In Dixon v. Green, 240 Miss. 204, 127 So. 2d 662 (1961), this Court affirmed a refusal by the commission to reopen a compromise settlement of a claim where the schedules were not applicable and it was not possible to determine the exact extent of disability. That compromise was based on Sec. 9(i). The Court pretermitted the question of whether Sec. 21 would apply to a 9(i) compromise. Nor do we have that issue here. The present case simply involves a reopening of a commuted lump sum payment under Sec. 13(j), not a compromise settlement under Sec. 9(i). The commission's order adopting the attorney referee's opinion recognized that distinction. Moreover, appellants in their brief concede that the majority rule is that a commuted lump sum payment may be reopened because of a change in condition or a mistake in a determination of fact. 58 Am. Jur., Workmen's Compensation, Secs. 500, 548, 395; 100 C. J. S., Workmen's Compensation, Sec. 650; 99 C. J. S., Workmen's Compensation, Sec. 351; Anno., 165 A. L. R. 9, 33-38 (1946).

■■■ In brief, the commission's order of September 1, 1959, approved a commuted lump sum payment under Sec. 13(j). This was in no respect a compromise settlement under Sec. 9(i). It was subject to be reopened

for a mistake in a determination of fact, which the commission correctly held had occurred.

*Third.* Appellants contend that appellee as a matter of law should be estopped from securing additional compensation, because of his admitted intention to seek a reopening of his claim after he received a commuted lump sum payment based on a fifty per cent disability. Considering all of the circumstances, we do not agree. We cannot say that the commission manifestly erred in refusing to find an estoppel.

Claimant was under treatment by a doctor to whom appellants sent him for over a year. He was receiving temporary total disability benefits, but with a wife and three minor children he became heavily in debt. Apparently he urged the doctor to make a report which would enable him to receive some cash payments on his admitted disability. The doctor had told him not to have an operation, although two orthopedists had recommended it; that he thought if claimant would go back to work, that exercise and time would help clear up the soreness in his arm. Finally the doctor made his final medical report of a fifty per cent permanent disability to the left arm. The evidence reflects that this report was erroneous, but no evidence indicates fraud. Claimant said that at the time he signed a form B-19 to accept permanent partial disability benefits, and at the time he applied for a commuted lump sum payment, he believed that his arm was more than fifty per cent disabled; and that in his opinion it had been and was one hundred per cent disabled. However, he relied a lot on Dr. Hicks' advice to him, and he needed some immediate cash for accrued debts, since he had not been able to work for more than a year.

After Dr. Hicks made his final medical report, Franks telephoned the commission. Later Commissioner Bruton made a trip to Natchez and, while there, discussed Franks' claim with him. Franks told him that his arm

was more than 50 per cent disabled. Both he and Bruton knew that the doctor had only reported a fifty per cent disability. Accordingly, Bruton advised him to go ahead and take a voluntary payment of fifty per cent permanent partial disability to the left arm; that he could subsequently obtain a lawyer and apply for additional compensation. This was no doubt on the assumption that claimant could support his assertion by competent medical testimony, as he later did. Before claimant signed a Form B-31, "Final Report and Settlement Receipt", for fifty per cent disability, he consulted an attorney. Manifestly his counsel knew that this Court had held in several cases that a B-31 is not a contract, but only notice to claimant that the one year statute of limitations in Sec. 21 begins to run from the date of its execution. H. C. Moody and Sons v. Dedeaux, *supra*.

██ █ The Workmen's Compensation Act gives the commission broad powers of investigation. Most of the claims under the Act are based upon voluntary payments of compensation. This fact apparently was a basic reason for the legislative grant of such powers. The commission may cause to be made such investigation as it deems necessary, upon application of a party or upon its own initiative. Code Sec. 6998-24. Such inquiries may be made "in such manner as best to ascertain the rights of the parties." Sec. 6998-28. It has the power to issue subpoenas, etc., Sec. 6998-31, and to require of employers reports as to industrial injuries. Sec. 6998-34. The commission has broad rule-making and regulatory powers, supplementary to the power of investigation. Sec. 6998-43. This Court has noted a commission practice of interviewing a claimant before he agrees to a Sec. 9(i) compromise settlement, in order to make certain that he is fully advised of his rights under the Act. Dixon v. Green, 240 Miss. 204, 127 So. 2d 662 (1961).

██ █ The administrative power of investigation to ascertain whether the purpose of a statute is being ef-

fectuated is well recognized and common in administrative law. 1 Davis, Administrative Law . Treatise (1958), Secs. 3.01-3.14. After Franks telephoned the commission, one of the commissioners therefore had the right to discuss the matter with Franks and to advise him of his rights. See Dixon v. Green, *supra*. Under a system of voluntary payments, the commission cannot know whether the provisions of the act are being carried out without access to facts. 1 Davis, Ibid., Sec. 3.14. It may be that the commissioner should not have made the suggestion that claimant accept a commuted payment based on a fifty per cent disability (to which he was undisputedly entitled), and later apply for additional benefits. But there is no intimation of fraud or chicanery in the suggestion that Franks accept what he unquestionably had a right to have. As a practical matter, it was manifest that he would have to controvert any claim for additional disability.

These above-stated circumstances would not warrant a holding, as a matter of law, that appellee was estopped from asserting his claim for additional compensation. It is undisputed that appellee was entitled to benefits for fifty per cent permanent disability in the left arm. Appellants do not contend otherwise. Moreover, a Form B-31 is not a contract and is not binding on a claimant. Since liability to that extent was clearly owed by appellants, they did not change their position to their detriment, which would be necessary in order for an estoppel to exist. Appellants offered no testimony to show that claimant's disability is less than one hundred per cent in his arm. The evidence shows a total loss. Hence there are no facts which would support an estoppel.

■■ ■ Moreover, the finding of a trial court or an administrative agency, sitting as a trier of the facts, that estoppel was not established by the evidence will not, under usual circumstances, be disturbed on appeal. 19

Am. Jur., Estoppel, Sec. 204. Although it is not necessary here to define its scope, Code Sec. 6998-21 invalidates agreements by employees to pay portions of compensation insurance premiums, and states, "No agreement by an employee to waive his right to compensation under this Act shall be valid." Application of an estoppel here, based upon claimant's signing the commission's forms, would in effect be contrary to this legislative mandate.

The commission, as the trier of facts, had the right to consider all of the circumstances, in ascertaining whether there should be an estoppel of appellee. Circumstanced as claimant was, with little or no familiarity with the compensation act and with financial obligations of a family pressing upon him, the commission was warranted in concluding, as it apparently did, that he should not be deprived of the remainder of his compensation benefits, which otherwise were undisputedly owed him, because of the recited facts; and in further concluding that appellants had not acted to their prejudice in reliance upon claimant. To apply the doctrine of estoppel would be giving effect to an abstract legal principle where the traditional elements of estoppel are non-existent, and where the trier of facts rejected it. See United Timber and Lumber Co. v. Dependents of Hill, 226 Miss. 540, 552, 84 So. 2d 921 (1956) (denying estoppel of employer and insurance carrier).

Affirmed.

*McGehee, C. J.,* and *Lee, Kyle, Arrington,* and *McElroy, JJ.,* concur.

*Jones, J.,* dubitante.

RODGERS, J., dissenting.

I concur in the fine resume of workmen's compensation law presented by the majority opinion in this case. I must, however, respectfully disagree with the results

reached in the majority opinion of the application of the law to the facts in this case.

In the outset, let me point out that I certainly agree with the opinion rendered in the case of Dixon v. Green, 240 Miss. 204, 127 So. 2d 662, since I wrote the order in the circuit court as Judge of the Fifth Circuit Court District and which was approved by the Supreme Court. No issue was raised in that case with reference to the unusual activity of one of the members of the Workmen's Compensation Commission, although the opinion points out that "one of the members of the Commission talked with the complainant about the effect of a settlement." It was apparent there that the investigation was fair and open and since the Commission is an investigative body, they may investigate claims although in my humble judgment, it should be done when both sides are present. This investigation however is a long way and a far tocsin hue and cry from the fair and open investigation of a workmen's compensation claim and the uncontradicted testimony in this case that a member of the Commission took a partisan's interest in the outcome of the claim here filed.

These are the facts: Earl Franks was injured while working at the Armstrong Tire and Rubber Company. He had a fracture of both bones in the left arm. He was voluntarily paid temporary total disability benefits for a period of sixty weeks, during which time he was given medical treatment and care. He was sent by the insurance carrier to various doctors, at his request, who advised him to have an operation. A metal plate was attached to one of the bones in his arm. This proved unsatisfactory and was removed. The testimony indicates that it was difficult to obtain a complete union and fusion of one of the bones. The Company doctor was of the opinion that use of the arm would cause it to heal. The claimant was unable to work at his old job with the Armstrong Tire and Rubber Company. The

claimant approached Dr. G. S. Hicks in an effort to obtain some sort of settlement so that he could pay his debts. "I told Dr. Hicks if he could go ahead and fix it so I could get some compensation in a lump sum so I could pay some of my debts and all, well, I would appreciate it. He said he would turn it in." The doctor made a report that the claimant was fifty per cent disabled in the use of his left arm, whereupon the claimant called the Compensation Commission and advised them that he was disabled in the use of his left arm to the extent of one hundred per cent. The claimant then testified: "I called the board and talked to them about it, the compensation board and one of the fellows come down here and met me and I forget what his name is * * * ."

Q. Mr. Bruton?

A. Mr. Bruton, yeah, So I wanted to go over there. I still don't know too much about it. Dr. Hicks had turned me in fifty per cent disability and I told him, naturally, I had more disability than that; asked him to go over there with me to see if we could get them to come to a better agreement so he advised me to just go ahead and take that and then get a lawyer and see if I could get some more; said it ain't no use in you trying to get more out of them because then they won't give you no more until you get a lawyer and go before a Referee. So that's what I did. I took the fifty per cent. Mr. Bruton told me not to sign the wrong paper. One paper you can sign you will be out. He told me what form to sign and I wrote it down. I don't remember it now but that's what I signed when I went up there and got that partial settlement I got." The witness also testified that "Oh, I discussed about that lump sum and Mr. Bruton said it would have to go through the Commission and I told him I was going to sign that and try to get a lump sum and the fellow up here told

me, 'Well, it would have to be so much they would take off if I got a lump sum.' " He also testified that the Insurance Company and Mr. Bruton knew that the claimant was going to make an application for a lump sum settlement.

The claimant went with Mr. Bruton to the office of the insurance carrier and obtained blanks to fill in. He was careful to follow the advice of Mr. Bruton with reference to signing blanks of a certain number but as soon as he obtained pay on a basis of a fifty per cent lump sum settlement with the "Lump Sum Settlement per order of Workmen's Compensation Commission dated September 1, 1959" written in the final report and settlement, the insurance carrier paid the claimant fifty per cent lump sum settlement. This settlement was approved by the Workmen's Compensation Commission by an order dated September 1, 1959. The defendant, Armstrong Tire and Rubber Company and carrier insurance company, together with the claimant, Earl Franks, filed a supplemental agreement in August 1959, in which it was agreed to pay and to accept compensation beginning July 24, 1959, of $25 for one hundred weeks and this was approved on August 28, 1959, by the Workmen's Compensation Commission. On August 27, 1959, Earl Franks filed an application for a lump sum settlement for the purpose "to pay off accumulated indebtedness". On September 12, 1959, the settlement receipt signed by Earl Franks was filed with the Commission. Prior to filing of this receipt, the claimant entered into a contract with an attorney, employing him to file application for additional compensation and in which he agreed to pay one-third of the amount recovered to the attorney. This contract is dated September 10, 1959. On November 5, 1959, an application was filed for additional compensation and on the 6th day of July 1960, the attorney-referee recommended reopening of the order and the allowing of additional compensation and on

November 17, 1960, the opinion of the attorney-referee was adopted by the full Commission as containing no error of fact or law.

This case should be reversed for two reasons.

First, the claimant, appellee, is morally and legally estopped to claim additional compensation on the ground of a mistake and second, there was no mistake of fact within the meaning of the Workmen's Compensation Law on which to base an order of the Commission to reopen the lump sum settlement and award additional benefits. The testimony in this case establishes that at the time that Dr. G. S. Hicks made his report the claimant was fully advised as to his condition and fully advised at that time that he claimed one hundred per cent disability in the use of his left arm. He so advised the Workmen's Compensation Commission by telephone and one of its members, a Mr. Bruton, made a trip to see the claimant and claimant advised the Commissioner that he was one hundred per cent disabled in the use of his left arm. The Commissioner fully understood his disability and fully understood that Dr. Hicks disagreed with the claimant so that he advised the claimant that the carrier would not pay him additional benefits and advised the claimant to accept a lump sum settlement and file for additional benefits as soon as he had obtained this settlement. The Commissioner went with the claimant to the carrier's office in an effort to effect this sort of arrangement to entrap the insurance carrier into believing that the claimant would accept the fifty per cent disability settlement recommended by the doctor. The Commissioner was careful to advise the claimant to avoid signing papers that might prevent the entrapment of the insurance company.

The Workmen's Compensation Commission is set up under our law as an investigative body to determine facts and I cannot conceive the trier of facts becoming partisan in any claim to the extent of going to the

claimant, or to the employer, or to an insurance carrier in an effort to help one of these parties perfect its side of the issue. I do not believe that this is the sort of fairness our Constitution requires for a fair trial. One of the fundamental rights every citizen has is to prosecute or defend any civil cause for or against him, or himself, before any tribunal in this state. Sec. 25, Miss. Constitution 1890. The action of the Commissioner and the claimant in this case was an effort to prevent the insurance company from defending a total disability claim of the appellee and we are here called upon to put the stamp of judicial approval of the activity of a state agency clothed with the power of determining facts in a cause which will bind this Court and which will de-bar and prevent one of the parties from defending a cause of action against it.

It has been the general rule throughout all of the states of this democracy that: "A fair trial means a trial before an impartial judge", as well as, "an honest jury". See also 14 Am. Jur., p. 853, para. 130. Our Court has pointed this out in the case of Floyd v. State, 166 Miss. 15, 148 So. 226, in which this Court said that the defendant is entitled to "a learned and upright judge" as well as an impartial jury. It has been said that it is the essence of a fair trial that the trial judge conducted it with complete disinterest and if he fails to do so, the judgment should be reversed. Baker v. U. S., 156 F. 2d 386; State v. Hudson, 215 S. W. 2d 441, 358 Mo. 424. The textwriter has pointed out that in order to afford due process of law: "The tribunal must be an impartial one." 12 Am. Jur., Constitutional Law, p. 326, para. 635. I am persuaded that one of our great judges, Justice Woods, has charted the proper course towards the true and ageless judicial polaris, when he said: "The fair way is the safe way, and the safe way is the best way * * *." See Hill v. State, 72 Miss. 527, 17 So. 376.

It may be argued that the appellee, claimant here, should not be punished for the action of one of the Commissioners, but this overlooks the fact that the appellee was a party to the arrangement and scheme which prevented the carrier insurance company from exercising its constitutional right to defend an action against it before the Commission. It also overlooks the fact that the insurance carrier was the victim of the scheme and arrangement between the appellee and a member of the Commission nor can I accept the excuse that the Workmen's Compensation Commission is an investigative body; because I cannot except the proposition that it is the duty of an investigative body to become an active participant in causes to be heard before that Commission.

Our Court has pointed out on several occasions that an estoppel may arise from misleading silence or persuasive conduct joined with a duty to speak and has said: "The doctrine lies at the foundation of morals, it is based on equity and good conscience." See Martin v. Hartley, et ux., 208 Miss. 112, 43 So. 2d 875; Kelso v. Robinson, 172 Miss. 828, 161 So. 135. It is the general rule that one may be estopped by his conduct as an admission and his conduct may prevent him from disputing his action and the rule is the same whether this admission by conduct is in fact true or false. The test is not whether the admission is true, but whether it would be contrary to public policy and good morals to allow it to be disputed. One branch of the rule of estoppel by conduct is thus stated by Mr. Stephen: "When one person by anything which he does or says, or abstains from doing or saying intentionally causes or permits another person to believe a thing to be true and to act upon such belief otherwise than he would have acted but for that belief, neither the person first mentioned nor his representative in interest is allowed in any suit or proceeding between himself and such person or his representa-

tive in interest, to deny the truth of that thing.'' See Jones on Evidence, Civil Cases, 2d Ed.

I am therefore of the opinion that the appellee, Earl Franks, is estopped to claim additional benefits under the Workmen's Compensation Law after having deliberately held out to the insurance carrier a settlement on a basis of fifty per cent total disability, knowing at the time that he was about to reopen the order not yet entered so as to obtain additional benefits.

### Second

I concur with the majority opinion that Secs. 6998-15 and 6998-19(j), Miss. Code 1942, Workmen's Compensation Law, regulates lump sum settlements and that no agreement by an employee to waive his right of compensation without the consent of the Commission shall be valid. (See Sec. 6998-21, last line.) I also agree that under Rule 16 of the Workmen's Compensation Commission's rules, the forms signed by claimant are not intended to be binding contracts.

Our way, reasoning, and course part under the facts in this case, when we reach the interpretation of the meaning of Sec. 6998-27, Miss. Code 1942, which is as follows:

"Continuing Jurisdiction of the Commission. Upon its own initiative, or upon the application of any party in interest on the ground *of a change in conditions* or because of a *mistake in a determination of fact,* the commission may, at any time prior to one (1) year after date of the last payment of compensation, whether or not a compensation order has been issued, *or* at any time *prior to one (1) year after the rejection of a claim,* review a compensation case, issue a new compensation order which may terminate, continue, reinstate, increase or decrease such compensation, or award compensation. Such new order shall not affect any compensation previously paid, except that an award increasing the com-

pensation rate may be made effective from the date of the injury, and if any part of the compensation due or to become due is unpaid, an award decreasing the compensation rate may be made effective from the date of the injury, and any payment made prior thereto in excess of such decreased rate shall be deducted from any unpaid compensation, in such manner and by such method as may be determined by the Commission.'' (Emphasis supplied.)

It is evident that there is no contention by the complainant that there was any change in his condition between the date of the order of lump sum settlement and the hearing on an application for additional benefits, in fact, it is stated that appellee was one hundred per cent disabled from the day he asked the doctor to fix it up so that he could make a lump sum settlement and was in the same condition when the order was reopened for additional benefits. The above Code Sec. is the authority by which the Workmen's Compensation Commission can reopen an order and in order to reopen such a judgment there must be either a *change in conditions* or *a mistake in determination of fact.* The evidence introduced at the hearing to reopen the order both by the appellee claimant and his doctors was to the effect that he was then and had been one hundred per cent disabled in the use of his left arm.

Since there was no change in condition, the only question is, was there a mistake in fact? What is a mistake in fact? The textwriter points out in 58 C. J. S., Mistake, p. 831, as follows: ''Mistake of fact' is a term not easy of definition, but stated with brevity and conciseness, it means any mistake except a mistake of law. It is defined as a mistake which takes place when some fact which really exists is unknown, or some fact is supposed to exist which really does not exist; one not caused by the neglect of a legal duty on the part of the person making the mistake.'' It is also stated by the same

textwriter on p. 830: "Mistake means a state of mind that is not in accord with the facts; an erroneous belief; a misunderstanding or misapprehension. While a mistake is generally regarded as a mental condition, state of mind, or belief, it is also defined as an act which would not have been done, or an omission which would not have occurred, but from ignorance, forgetfulness, inadvertence, mental incompetence, surprise, misplaced confidence, or imposition; some unintentional act, omission, or error, arising from ignorance, surprise, imposition, or misplaced confidence."

The textwriter has also pointed out in 100 C. J. S., Workmen's Compensation, p. 969, para. 651 that: "The board or commission is justified in refusing to reopen the case where the ground specified is one which might have been considered on a timely review by the court of the original award, as where it is based on the ground that the evidence does not justify the findings of fact, although the award may be set aside on this ground under authority of statutes and rules. So, refusal to vacate or set aside has been held justifiable where no change of conditions, mistake, or fraud was alleged or where it did not appear whether the facts presented were considered at the first hearing or that they were then known or thereafter discovered; and the award should not be opened or vacated on the ground of newly discovered evidence where such testimony is merely cumulative or corroborative, where the evidence should, by ordinary prudence, have been produced at the trial, or where no reason was shown why the witness whose testimony was sought to be admitted on reopening was not called at the original hearing."

In the case of Hudgins v. Marine Welding and Repair Works, 237 Miss. 301, 114 So. 2d 767, this Court, in passing upon this very section said: "Under this section there must be 'a change in conditions or because of

a mistake in a determination of fact' before a review is in order.''

In the case of Hall v. Seaboard Maritime Corporation, 104 So. 2d 384, a Florida statute, which is similar to our own, states as follows: ''Upon their own initiative or upon application of any party in interest, on the ground of a change in condition or because of a mistake in a determination of fact the commission may * * * issue a new compensation order * * *.'' That court said: ''As we construe it, this section was intended to apply to those cases in which by reason of a lack of evidence the Commission has not had an opportunity to properly determine the issues arising out of a claim—as when a claimant fails to show the true extent of his injury either because such was not then known, or had not manifested itself in sufficient degree as to be subject to proof.'' And again, ''Further, while new evidence may be fairly introduced in a proceeding to reopen on the ground of a mistake in a determination of fact, and this new evidence need not be 'newly discovered', it is equally plain that the statute means something more than that the commissioner may change his mind whenever he pleases, and either on the same evidence or new evidence, made a new award.''

The case of Wells v. Fox Ridge Mining Co., 243 S. W. 2d 676, is a Kentucky case and is based upon a statute similar to ours. '' 'The only grounds upon which an award can be reopened are change of condition, mistake or fraud. * * *' '' The court there said: ''We are confronted with the question: What does the word 'mistake,' as used in the statute mean? We have held that the board may review an award in order to correct a mistake in computation, Beaver Dam Coal Co. v. Hocker, 202 Ky. 398, 259 S. W. 1010, and to substitute a lawful wife as beneficiary in place of a bigamous one, Johnson v. Hardy-Burlingham Mining Company, 205 Ky. 752, 266 S. W. 635. In most of the cases we have

reviewed, the 'mistakes' were accompanied with some change in the condition of the injured person. In the case of Stearns Coal & Lumber Co. v. Vanover, 262 Ky. 808; 91 S. W. 2d 518, it was held that the statute authorizing the board to change its order because of 'mistake' included mistakes of law as well as fact, but mistake, regardless of whether it is of law or fact, must be founded upon ignorance before relief may be granted on account of it. Woodworth v. Prudential Ins. Co., 171 Misc., 585, 13 N. Y. S. 2d 145.''

In the case of Texas Employers' Ins. Assn. v. Sheppherd, 42 F. Supp. 669, under the Longshoremen's and Harbor Workers' Compensation Act, 33 U. S. C. A., para. 901, a statute similar to ours, the Federal District Court of Texas held: "The statute does not say, (and) it does not mean, that a compensation proceeding may be reopened whenever any party finds a witness who can testify more favorably for him than his other witnesses had done. It permits a reopening if there has been a change in conditions or a mistake in a determination of fact. These are clear conditions, simply expressed and easily understood. Unless one or the other of them appears, there may be no reopening.''

In the case of Albrecht Co. v. Michaw, et al., 29 N. E. 2d 334, the Indiana Court, in passing upon a statute similar to our Mississippi statute held that "An application for change in compensation award on account of mistake should be scrutinized closely and cautiously granted, and a proceeding after an award has been made should not be reopened for the purpose of allowing a party to make a new case.''

In the case of Bomersine v. Armour & Co., 30 N. W. 2d 526, the court held that "* * * where a motion to vacate an original award is based upon the subsequent discovery of facts in existence at the time the award was made rather than upon the development of new facts, there is greater reluctance to grant a rehearing or

to hold that the commission abused its discretion in denying a motion to vacate.''

In the case of Welhouse, et al. v. Industrial Commission of Wisconsin, et al., 252 N. W. 717, the Supreme Court of Wisconsin, in passing upon a statute similar to our statute said: ''* * * the mistake must be made to appear * * *. An orderly procedure would require the commission to indicate the nature of the mistake. The power conferred is not arbitrary. It has no power of opening its award unless there was a mistake. It is in effect a jurisdictional fact and therefore subject to review.''

In the case of Gravel Products Corp. v. McManigal, 14 F. Supp. 414, the District Court of New York pointed out that a commissioner was without power to reopen compensation proceedings for a ''mistake in determination of facts'' merely because all the facts had not been adduced at the original hearing.

In the case of Southern Mining Co. v. Collins, 300 S. W. 896, the court in that case held that where a claimant seeking compensation tried by a motion to reopen a case, after an award had been denied, by presenting affidavits which contained nothing that had not been determined by the circuit court on appeal there being nothing to show facts were considered by member of the board at first hearing or that facts were known to claimant at the time or thereafter discovered, it was held that such showing would not justify the board in reopening the case.

It has been pointed out by the textwriter in 11 Am. Jur., Compromise and Settlement, Sec. 32, p. 280, that ''Generally speaking, if there was a mutual understanding as to the payment and acceptance of something in full settlement of the controversy, without fraud or unfair conduct on either side, the compromise cannot be avoided for mistake of fact although subsequent events may show that either party made a bad bargain, be-

cause of a wrong estimate of the damages which would accrue.'' This is also the law in workmen's compensation cases as will be seen from the text found in 58 Am. Jur., Workmen's Compensation, Sec. 500, p. 890. "Various conclusions have been reached in cases dealing with the question whether or to what extent a compensation tribunal may reopen and modify an award based upon a voluntary settlement or agreement of the parties. The question depends largely upon the terms of the statutory provisions involved, and may also be affected by the provisions of the particular agreement.''

This is also pointed out in Dunn's Mississippi Workmen's Compensation Law, Sec. 81.52.

There was no mistake in fact as shown by the evidence introduced in this case. The claimant knew that he was not settling his case and that he would claim additional benefits; the Commission was advised of such fact by the claimant through one of the commissioners, and since there was no mistake of fact and it is admitted that there was no change in the condition of the claimant, the Commission abused its discretion in arbitrarily setting aside its former order for the purpose of awarding additional benefits on facts it knew about through one of the commissioners at the time the order was entered. The Workmen's Compensation Commission cannot reopen a case after a solemn order has been entered simply because the Commission has changed its mind or has suggested a way to reopen before an order was entered or through caprice or whim. There are only two ways a Commission can reopen an order under Sec. 6998-27, that is to determine from evidence properly introduced that there is a change in *the condition* of the claimant or there was a *mistake in fact*. Since there was neither in this case, the judgment of the Commission affirming the order of the attorney-referee in which he reopened a lump sum payment award for the

purpose of allowing additional benefits should be reversed and the lump sum settlement award reinstated.

GILLESPIE, J., concurring.

I concur in the results with reservations and some doubts. On the one hand, I cannot approve the actions of the Commissioner who advised appellee to accept a lump sum settlement or payment based on fifty percent loss of use of his arm without advising the employer and carrier that he would immediately employ an attorney and seek additional compensation. On the other hand, I am unable to say that appellee, circumstanced as he was, is estopped as a matter of law. He followed the advice of the Commissioner, and in his situation probably had no reason to think he was doing anything irregular.

My concurrence is largely based on these considerations: (1) Appellee sustained a total loss of use of his arm; this is undisputed and appellants did not seek to controvert this issue of fact although they had an opportunity to do so; (2) the determination that appellee sustained only a fifty percent loss of use or disability to his arm at the time of the lump sum payment was a mistake because it was a fact that the disability was one hundred percent; and (3) the matter of reopening the case under Section 21 is a matter for the Commission whose action may not be reversed unless there was an abuse of discretion, and the question of estoppel was addressed to the sound discretion of the Commission under all the circumstances including the undisputed fact that appellants owed appellee compensation for one hundred percent disability to his arm.