WILSON, J., FOR THE COURT:
¶ 1. George Huey was injured in a car wreck while traveling through Alabama for work. Huey's employer, RGIS Inventory Specialists, took the position that Huey was not entitled to workers' compensation benefits because prior to the wreck he had deviated from the course and scope of his employment by becoming embroiled in a "road rage" incident with another motorist. The Workers' Compensation Commission ultimately denied Huey's claim for benefits on that ground, this Court affirmed, and the Mississippi Supreme Court denied Huey's petition for a writ of certiorari. Huey v. RGIS Inventory Specialists , 168 So.3d 1145 (Miss. Ct. App.) ( Huey I ), cert. denied , 152 So. 3d 1176 (Miss. 2014).
¶ 2. Just under a year after the appellate mandate issued in Huey I , Huey filed a motion asking the Commission to reopen his claim. Huey alleged that his claim had been denied based on a mistake in a determination of fact because new evidence showed that prior testimony about the wreck was unreliable. The Commission denied *364 Huey's motion after finding (1) that the motion was untimely because it was filed more than one year after the Mississippi Supreme Court denied certiorari in Huey I and (2) that Huey failed to present any "newly discovered evidence" and failed to show any mistaken determination of fact.
¶ 3. We affirm the decision of the Commission. Huey's motion to reopen was timely; however, we affirm the Commission's ruling on the merits.
FACTS AND PROCEDURAL HISTORY
¶ 4. On January 19, 2009, Huey was driving an RGIS van to Tennessee to conduct an inventory audit. On Interstate 59/20 near Livingston, Alabama, he encountered a car driven by Edwin Crawley. While Huey was trying to change lanes, his van nearly collided with Crawley's car. The near miss forced Crawley to swerve and "spin out" off the interstate before regaining control of his car. This set in motion a series of events that ultimately gave rise to Huey's claim. In our prior opinion, we described those events as follows:
[Crawley] began pursuing Huey. According to Huey's testimony ... it took Crawley approximately ten to fifteen minutes to catch up to him. Crawley passed Huey and moved into Huey's lane. Crawley then slowed down and forced Huey to stop his van. The record indicates that Huey and Crawley were stopped either partially or entirely in the right lane of the interstate. It is undisputed that Huey had enough room to drive around Crawley's car.... Huey [testified] that he was looking for the button to activate his flashers, and he had not come to a complete stop, when he was struck from behind by an eighteen-wheeler truck. Huey injured his back in the collision.
Alabama State Trooper Keith Wilson responded to the scene. According to Trooper Wilson, Crawley told him that Huey had been speeding past him and then slamming on his brakes. Crawley added that Huey had done so "for several miles." However, Huey told Trooper Wilson that Crawley had been doing the same thing to him. That is, Huey said that Crawley had been passing him, and then Crawley had been slamming on his brakes while he had been driving in front of Huey. Trooper Wilson later testified during a deposition that both Huey and Crawley admitted to him that they had been driving aggressively.
Huey I , 168 So.3d at 1147 (¶¶ 3-4).
¶ 5. Based in part on Trooper Wilson's testimony, the Commission found that Huey had parked his van in the right-hand lane of the interstate as part of a "road rage" incident with Crawley. Thus, the Commission found that Huey had departed from the scope and course of his employment, so his injury was not compensable. On appeal, this Court stated that "the record support[ed] more than one possible explanation for why Huey stopped his van." However, we found that "[i]t was within the Commission's discretion to accept Trooper Wilson's testimony" and to then find that a road rage incident was "the best and most reasonable explanation for an individual parking his vehicle in the right-hand lane of an interstate highway." Id. at 1148 (¶ 8) (brackets omitted). This Court also concluded that the Commission was not required to accept Huey's version of events, and we noted that "Huey's version of the events changed to some extent at least twice, and it became more favorable to his claim each time he changed it." Id. at (¶ 9).
*365 ¶ 6. Huey continues to dispute the Commission's findings in Huey I. Huey maintains that Crawley sped to catch up with him after their initial near-collision because Crawley thought something was wrong with Crawley's car and he wanted Huey to pull over. Huey denies that there was any "road rage" incident; instead, he maintains that as he slowed down behind Crawley to pull off the interstate, the tractor-trailer struck his van from behind.
¶ 7. While his worker's compensation claim was pending before the Commission, Huey filed suit in Alabama state court against the driver of the tractor-trailer, Kenneth Dale Conner, and Dean Foods and Barber Milk, whom we assume to be Conner's employers and/or the owners of the tractor-trailer. Huey alleges that he first learned during discovery in the Alabama case that his van and the tractor-trailer had computers known as "black boxes" that recorded information about the vehicles' speeds near the time of the collision. Huey claims that the information from the black boxes indicates that his van was still moving at the time of the collision and was not parked in the right lane of the interstate.
¶ 8. On January 4, 2016, Huey filed a motion to reopen his workers' compensation case. In support of his motion, he submitted deposition testimony of two accident reconstruction experts from the Alabama litigation. One expert, Dr. Preston Scarber Jr., testified that data from the black box in Huey's van indicated that the van was traveling about seventeen miles per hour when it was struck by the tractor-trailer, which was traveling approximately sixty miles per hour. Scarber also testified that the force from the collision increased Huey's van's speed to more than thirty miles per hour before the van collided with Crawley's vehicle. Scarber believed that Crawley's vehicle was stopped or very nearly stopped when it was struck by Huey's van. Scarber disagreed with Trooper Wilson's version of events. Scarber testified that black box data and photographs did not support Trooper Wilson's conclusions.
¶ 9. The administrative judge found that Huey's case should be reopened due to new evidence and facts. However, on appeal to the full Commission, the Commission reversed and denied Huey's motion to reopen for two reasons. First, the Commission found that the motion was untimely because a motion to reopen must be filed, as relevant in this case, "prior to one ... year after the rejection of a claim." Miss. Code Ann. § 71-3-53 (Rev. 2011). Huey's motion was filed less than one year after the appellate mandate issued in Huey I , but it was filed more than a year after the Mississippi Supreme Court denied certiorari. See Huey v. RGIS Inventory Specialists , MWCC No: 0904755K7478, 2017 WL 6617668, at *2 (Miss. Workers' Comp. Comm'n Mar. 22, 2017).
¶ 10. Second, the Commission also denied Huey's motion on the merits. The Commission found that Huey's new evidence was "not newly discovered evidence since the [black boxes] had been available for inspection since the date of the accident." The Commission also found that Huey failed to show that the Commission's decision in Huey I was based on "a mistake in a determination of fact as required by [ section] 71-3-53." See id. at *3.
¶ 11. On appeal, Huey argues that his motion to reopen was timely because section 71-3-53's one-year statute of limitations did not commence until the appellate mandate issued in Huey I . Huey also argues that the rejection of his claim in Huey I was based on a "mistake"-namely, the Commission's reliance on Trooper Wilson's testimony, which, according to *366 Huey, is refuted by new evidence. We address these issues in turn.
ANALYSIS
¶ 12. In general, this Court's "review of a decision of the Workers' Compensation Commission is limited to determining whether the decision was supported by substantial evidence, was arbitrary and capricious, was beyond the scope or power of the agency to make, or violated one's constitutional or statutory rights." Gregg v. Natchez Trace Elec. Power Ass'n , 64 So.3d 473, 475 (¶ 8) (Miss. 2011). However, we review issues of law de novo. See id. at 475-76 (¶ 9).
¶ 13. Section 71-3-53 grants the Commission authority to reopen a compensation case under certain circumstances:
Upon its own initiative or upon the application of any party in interest on the ground of a change in conditions or because of a mistake in a determination of fact, the commission may , at any time prior to one (1) year after date of the last payment of compensation, whether or not a compensation order has been issued, or at any time prior to one (1) year after the rejection of a claim, review a compensation case....
Miss. Code Ann. § 71-3-53 (emphasis added).
¶ 14. As the statute's language makes clear, "[t]he statute is not mandatory." Ga.-Pac. Corp. v. Gregory , 589 So.2d 1250, 1254 (Miss. 1991). "Rather, '[i]t is discretionary with the [C]ommission whether or not it will reopen a case.' " Id. (quoting Vardaman S. Dunn, Mississippi Workers' Compensation § 336, at 424-25 (3d ed. 1982) ). "So long as its discretion is not abused, this Court will not interfere. In short, if there is any reasonable basis upon which the [decision of the] Commission may have been justified ..., its decision will be affirmed." Armstrong Tire & Rubber Co. v. Franks , 242 Miss. 792, 799, 137 So.2d 141, 144 (1962) (citations omitted); see also Smith v. CompFirst/L.C. Indus. , 186 So.3d 873, 877 (¶ 13) (Miss. Ct. App. 2015) ("[S]ection 71-3-53 does not create a right for any interested party to reopen a claim. This section instead gives the Commission discretionary authority to reconsider a claim." (citation omitted) ), cert. denied , 186 So.3d 854 (Miss. 2016).
I. Timeliness
¶ 15. As described above, the Mississippi Supreme Court denied certiorari in Huey I on December 11, 2014, and the appellate mandate issued on January 5, 2015. Section 71-3-53 permits the Commission to review and reopen a case "at any time prior to one ... year after the rejection of a claim ...." Huey filed his motion to reopen on January 4, 2016-or 364 days after the mandate issued in Huey I. In denying Huey's motion as untimely, the Commission reasoned that "[t]here was no additional action [that Huey] could [have] take[n] beyond December 11, 2014, [to] further appeal [the rejection of his] claim."[1] The Commission therefore concluded that Huey's claim was finally rejected on the day that the Mississippi Supreme Court denied certiorari in Huey I. We disagree.
¶ 16. There are no appellate decisions that address the precise issue before us: the date on which a claim on appeal from the Commission is rejected for purposes of triggering section 71-3-53's one-year statute of limitations. However, in *367 Harper v. Cal-Maine Foods Inc. , 43 So.3d 401 (Miss. 2010), the Supreme Court held "the statute of limitations for a bad-faith claim against an employer or insurance company for failure to pay [workers' compensation] benefits begins to run when the Commission renders final judgment." Id. at 403 (¶ 6). In a footnote, the Court further stated that if an appeal is taken from "the Commission's final judgment, the statute of limitations does not begin to run until a final mandate has issued from the appeals process. " Id. at 403 n.3 (emphasis added); accord Hardaway v. Howard Indus. Inc. , 211 So.3d 718, 722 (¶ 16) (Miss. Ct. App. 2016), cert. denied , 209 So.3d 431 (Miss. 2017).
¶ 17. We see no reason to adopt a different triggering event for the statute of limitations for a motion to reopen under section 71-3-53. The issuance of the mandate provides a clear event to commence the running of the statute of limitations in all cases that are appealed from the Commission. Therefore, we hold that when there is an appeal from a final judgment of the Commission, the claim is not finally rejected for purposes of section 71-3-53, and "the statute of limitations does not begin to run[,] until a final mandate has issued from the appeals process." Harper , 43 So.3d at 403 n.3. Accordingly, Huey filed his motion to reopen within section 71-3-53's one-year statute of limitations.
II. Mistake of Fact
¶ 18. Huey asserts that "black box" data and expert testimony interpreting it shows that the Commission's original decision denying his claim was based on a mistake in a determination of fact. He argues that this evidence refutes Trooper Wilson's conclusions about the collision. Specifically, he argues that data retrieved from his van's black box indicates that the van was still moving at the time of the collision, whereas Trooper Wilson testified that Huey had come to a complete stop in the right lane of the interstate. Huey argues that evidence contradicting Trooper Wilson's testimony on this point calls into question all of Trooper Wilson's conclusions about the collision, including the conclusion that it arose out of some sort of road rage incident. This, according to Huey, is the mistake in fact: that Trooper Wilson's testimony and conclusions were reliable.
¶ 19. The Commission found that Huey failed to demonstrate a mistake in a determination of fact, as required by section 71-3-53. The Commission stated that the new evidence on which Huey relied was "not newly discovered evidence since the [black boxes had] been available for inspection since the date of the accident," but Huey failed to request them or analyze them for use in his workers' compensation case. The Commission also stated that the basis of its original decision in this case had been that Huey "engaged in a personal altercation for several miles along the Interstate," which "was found to be a deviation which removed [him] from the course and scope of his employment." The Commission concluded that Huey had not shown that this basic premise of its original decision was a mistake.
¶ 20. As discussed above, section 71-3-53 does not mandate that any case be reopened but only provides that the Commission "may" do so in its discretion. Gregory , 589 So.2d at 1254 ; Smith , 186 So.3d at 877 (¶ 13). "So long as [that] discretion is not abused, this Court will not interfere." Franks , 242 Miss. at 799, 137 So.2d at 144. We find no abuse of discretion on the part of the Commission in this case. To begin with, we do not believe that the Commission abused its discretion by declining to reopen the case based on evidence that could have been produced at *368 the original hearing. As our Supreme Court and this Court have stated, "an allegation of mistake should not be allowed to become a backdoor route to re-trying a case because one party thinks he can make a better showing on the second attempt." J.R. Logging v. Halford , 765 So.2d 580, 584 (¶ 18) (Miss. Ct. App. 2000) (emphasis omitted) (quoting Bailey Lumber Co. v. Mason , 401 So.2d 696, 704 (Miss. 1981) ).
¶ 21. Moreover, the basic premise of the Commission's original decision denying Huey's claim was its finding that Huey deviated from the course and scope of his employment to engage in a "road rage" incident with Crawley. The black box data and expert testimony submitted in support of Huey's motion to reopen do not disprove this premise. The main import of this new evidence seems to be that Huey's van was still moving-albeit very slowly-in the right lane of the interstate and was not completely stopped and parked, as Trooper Wilson had surmised. The new evidence does not and cannot address why Huey was driving only seventeen miles per hour in the right-hand lane of an interstate highway with a speed limit of seventy miles per hour. The main issue in this case has always been whether Huey's actions were part of a road rage incident, a deviation from the course and scope of his employment. Consistent with the Commission's original decision, Huey could have been slowing to confront Crawley as part of a road rage incident. The fact that Huey's van was moving very slowly-and not yet at a full stop-does not necessarily change the outcome of the case. Therefore, we cannot say that the Commission abused its discretion by finding that Huey failed to show "a mistake in a determination of fact." Miss. Code Ann. § 71-3-53.
CONCLUSION
¶ 22. Huey's motion to reopen was timely, but the Commission's decision denying the motion on its merits was not an abuse of discretion. Therefore, the decision of the Commission is AFFIRMED .
IRVING AND GRIFFIS, P.JJ., CARLTON, FAIR, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR. LEE, C.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. BARNES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.

As a technical matter, this is not entirely accurate. Huey could have filed a petition for a writ of certiorari in the United States Supreme Court, although it would have been futile because Huey I did not raise any federal question.