589 So.2d 1250 (1991)
GEORGIA-PACIFIC CORPORATION
v.
David L. Gregory.
No. 89-CC-0869.
Supreme Court of Mississippi.
November 6, 1991.
*1252 Robert G. Germany, Crymes G. Pittman, Cothren & Pittman, Jackson, for appellant.
Michael H. Steele, Steele & Shaw, Kosciusko, for appellee.
Before HAWKINS, P.J., and PRATHER and ROBERTSON, JJ.
PRATHER, Justice, for the Court:

I.
Georgia-Pacific Corporation, a self-insured employer, has appealed a judgment of the Circuit Court of Winston County affirming an award of permanent partial disability to the body as a whole made by the Mississippi Workers' Compensation Commission (the Commission) to David Gregory for an inner ear dysfunction known as Meniere's Syndrome. Georgia-Pacific argues on appeal that:
(1) the finding of the Commission is not supported by substantial evidence;
(2) the Commission erred in finding that Gregory had a loss of wage earning capacity of $25.00 a week; and
(3) the Commission erred in not finding that any permanent disability sustained by Gregory was limited to the partial loss of use of a scheduled member in accordance with Miss. Code Ann. § 71-3-17(c)(17) (1972).
On review, this Court holds there was substantial credible evidence supporting the findings made by the Commission and, accordingly, we affirm.

II.
Meniere's Syndrome is a rare inner ear dysfunction created by an abnormal build-up of fluid in the canals of the inner ear. This condition usually results in a fluctuating hearing loss, a feeling of fullness, tinnitus (ringing in the ears), and episodic vertigo (dizziness). It affects the entire body and appears to be life-long in nature. The etiology or cause of Meniere's Syndrome is largely unknown.
David L. Gregory has been an employee with Georgia-Pacific since 1967. During his course of employment, he has operated a de-barking machine, a block saw, and a skinner saw. For the past eight to ten years, he had been operating a sanding machine which had a noise level, which was, in Gregory's opinion, "very high." In his own words, "it just makes a lot of racket."
In the late seventies Gregory became aware of a hearing loss. Subsequently, he noticed the onset of dizziness. On January 7, 1981, Gregory filed with the Mississippi Workers' Compensation Commission a "Motion To Controvert" in which he claimed that during the month of July, 1980, he became aware he had received a compensable injury while employed by Georgia-Pacific. In his motion, Gregory claimed he had been "exposed to job related noises resulting in hearing loss and vertigo."
Following a series of hearings, the administrative judge, on May 1, 1984, entered an order finding, inter alia, "[t]hat during the Month of July, 1980, the claimant sustained a compensable injury which arose out of and within the course and scope of his employment with Georgia-Pacific Corporation and which was the sole causative factor of a five percent (5%) permanent partial loss of hearing in each of his ears." The administrative judge ordered Georgia-Pacific to pay Gregory "... permanent partial disability benefits at the rate of $98.00 per week, commencing on July 31, 1980, and continuing for a period of seven and one-half (7 1/2) weeks thereafter." No review of this order was sought and it became final twenty days later. Georgia-Pacific paid benefits through December 3, 1984, and filed with the Commission a Form B-31 on February 19, 1985, thus triggering the one year limitations period of Miss. Code Ann. § 71-3-53.
Within one year, on December 3, 1985, Gregory filed a second "Petition To Controvert" together with a "Motion To Reopen Claim." Gregory, alleging changes in his condition (additional difficulties with hearing and increase in balance dysfunction) related to his original industrial injury, requested additional benefits.
*1253 On April 18, 1988, the same administrative judge entered a second order finding there had been a worsening of Gregory's condition with regard to his ears and dizziness since the date of the last hearing. The judge found that Gregory was suffering from Meniere's Syndrome, that "the noise at Georgia-Pacific Corporation was a contributing, precipitating or aggravating factor in the production of this disease", and that claimant had a permanent partial disability to the body as a whole. A judgment was entered requiring Georgia-Pacific to pay $25.00 per week to Gregory for a period of 450 weeks.
The administrative law judge found as a fact "[t]hat as a result of the claimant's employment the claimant received a permanent partial disability to his body as a whole which said disability was not ascertained or diagnosed until a time subsequent to February 19, 1985; ..."
The reopening of Gregory's claim for benefits and the award of benefits over and above those benefits awarded by the administrative judge in his order issued May 1, 1984, is based largely upon two findings of fact: (1) that Gregory has Meniere's Syndrome/Disorder/Disease and (2) that the disease is work-related. Georgia-Pacific contends these findings are not supported by substantial evidence.

III.
Our scope of review is as limited as it is familiar. We will reverse the decision of the Commission only if it is manifestly wrong and not supported by substantial evidence. Metal Trims Industries, Inc. v. Stovall, 562 So.2d 1293 (Miss. 1990); Robinson v. Packard Elec. Div. General Motors Corp., 523 So.2d 329 (Miss. 1988).

A. Diagnosis
Georgia-Pacific questions the diagnosis of Meniere's Syndrome made by Dr. Emmett, a Board Certified Otolaryngologist associated with the Shea Clinic in Memphis, Tennessee. One-fourth (1/4) to one-third (1/3) of the patients he sees every day at the Shea Clinic in Memphis are afflicted with this malady. Shea Clinic is a referral center for this inner ear dysfunction. Three (3) textbooks on the disorder have been edited from the Shea Clinic. Dr. Emmett treats over 100 medical doctors from around the country with this problem.
In Dr. Emmett's deposition, he concluded, "based on Mr. Gregory's history of episodic vertigo, tinnitus, possible fluctuant hearing loss on the right as well as the results of his inner ear function tests, I felt that he had Meniere's Disorder or Disease." Emmett's "final diagnosis," based on a reasonable medical probability, was Meniere's Disease. Dr. Emmett concluded from his diagnostic tests and a review of Gregory's medical history that the disorder was confined to the claimant's right ear. In any event, Gregory "had a fairly classic pattern for the one that we see with Meniere's Disease." This Court is convinced of the sufficient level of medical proof concerning the identity of Gregory's condition and has little difficulty in concluding that the fact-finding by the Commission that Gregory suffered from Meniere's Syndrome is supported by substantial evidence.

B. Causal Connection
The administrative law judge found as a fact that, as a result of the claimant's employment, Gregory received a permanent partial disability to the body as a whole resulting from Meniere's Syndrome. In reaching this conclusion the administrative judge relied upon "Dr. Emmett's opinion that the claimant suffered from a condition known as Meniere's Syndrome and that the noise at Georgia-Pacific Corporation was a contributing, precipitating or aggravating factor in the production of this disease."
Georgia-Pacific argues there is a lack of substantial evidence to support any connection between Gregory's employment and his Meniere's Syndrome. Appellant argues that Gregory's employment since 1967 as an operator of a de-barking machine, a block saw and a skinner saw, and his eight to ten years as a sander operator could not have been a contributing factor in causing the disease.
*1254 For a disability to be compensable, it must have arisen out of and in the course of employment. Miss. Code Ann. § 71-3-7 (Rev. 1989)[1]. In other words, the disability must be "work connected." "[An] injury arises out of and in the course of the employment if the employment aggravates, accelerates, or contributes to the disability as opposed to being the sole or principal cause." Fought v. Stuart C. Irby Co., 523 So.2d 314, 318 (Miss. 1988); see also Hardin's Bakeries v. Dependent of Harrell, 566 So.2d 1261 (Miss. 1990).
Although the etiology of Meniere's Syndrome is largely unknown, there is substantial evidence that exposure to high intensity noise for a period of years at the work site contributed to, aggravated or accelerated Gregory's condition. Dr. Emmett was asked if, based upon reasonable medical probabilities, the claimant's history of being exposed to noise at work would be "a contributing, precipitating, or aggravating factor in the production of Meniere's Disease which Gregory now exhibits." Dr. Emmett answered: "I would have to answer `yes.' Not `the' but perhaps one of them." When asked if he meant that was a "precipitating cause," Dr. Emmett replied, "That's correct." Emmett also stated that high intensity noise could have well been one of the factors that played a role in establishing causal connection for this inner ear disorder. Exposure to high intensity noise, while not "the" cause of Meniere's Syndrome, "could well be a contributing factor."
While Georgia-Pacific casts some doubt upon the diagnosis made by Dr. Emmett and assails the finding of work relationship made by the Commission, certainty is not a requisite in deciding a workers' compensation case; rather, the Court considers reasonable medical probabilities. Put another way, medical findings sufficient to show a compensable disability are not required to be precise, complete and unequivocal. South Central Bell Telephone Company v. Aden, 474 So.2d 584, 591 (Miss. 1985).
Neither the diagnosis of Meniere's Syndrome, nor precipitation thereof by job-related conditions, was controverted by any direct medical evidence put on by Georgia-Pacific. We hold the finding by the Commission that the noise at the work site was a contributing, precipitating, or aggravating factor in the production of Meniere's Syndrome was supported by substantial evidence.

C.
Georgia-Pacific also complains that the reopening of Gregory's claim was improper. By virtue of Miss. Code Ann. § 71-3-53 (1972), the Commission may reopen a compensation case "[1] on the ground of a change in conditions or [2] because of a mistake in a determination of fact... ." The statute is not mandatory. Rather, "[i]t is discretionary with the commission whether or not it will reopen a case." Dunn, Mississippi Workers' Compensation § 336, at p. 424-25 (3d ed. 1982). Gregory's "Motion To Reopen Claim", which was filed on December 3, 1985, is based upon "changes in his condition."
"The burden of proof for showing a change in conditions is on the party, whether claimant or employer, asserting the change. [citation omitted] If a party cannot establish by a preponderance of the evidence that the claimant's condition has changed, then the petition to reopen should be denied and the original order maintained." North Mississippi Medical Center v. Henton, 317 So.2d 373, 375 (Miss. 1975).
Gregory testified his condition had worsened and that additional medical treatment and diagnostic procedures were necessary. The additional medical treatment *1255 and diagnostic procedures established for the first time a definitive diagnosis of Meniere's Syndrome.
In the "Evaluation of Evidence" portion of his order granting disability benefits, the administrative judge stated: "At the hearing on February 3, 1987, the claimant testified of his worsening condition with regard to his ears and dizziness that he has been experiencing since the date of the last hearing." There is substantial evidence in the record to support this finding.
Gregory testified his hearing was getting "a little worse from what it was" and complained of "deafness." He also complained that despite the medication he had been taking to control his vertigo, the dizziness was "a little worse." Gregory also testified that since May of 1984 his dizziness had required him to see his private physician, Dr. Callaway, about three times for medication prescriptions. Dr. Callaway later referred Gregory to Dr. Blanton in Jackson who, in turn, referred claimant to the Shea Clinic in Memphis. In November of 1986, as well, Gregory had been seen by Dr. Charles Neill, a neurosurgeon in Jackson who had performed a CAT scan for the purpose of trying to determine what had been causing the dizziness and increased hearing loss since May of 1984.
Dr. Emmett, who saw Gregory on February 9, 1987, and again on May 18, 1987, stated in his deposition that Gregory "was describing almost daily attacks of true whirling vertigo, oftentimes associated with nausea. He also complained of a constant tinnitus  that's ringing in the ears  in both ears, the right being a little bit worse than the left." These symptoms had become more severe immediately prior to Gregory's clinic visit.
Dr. Blanton's diagnosis in 1982 of Gregory's condition was that of "a mild neurosensory hearing loss" for which Gregory was awarded a 5% permanent partial disability. The original award was made for loss of hearing only. Dr. Emmett's diagnosis was Meniere's Syndrome which the Commission perceived to involve more than a simple loss of hearing. The new order specifically cited the new finding of impairment to the body as a whole with concomitant loss of wage earning capacity.
We hold the Commission did not abuse its discretion in permitting the claimant to reopen his case. The finding by the Commission that there had been "a change in conditions" was supported by substantial evidence.

IV.
The administrative judge found on substantial evidence "[t]hat the increase in the claimant's average weekly wage since May 1, 1984, has been the result of general wage increases at the employer; ..."
Gregory testified his increased wage since 1984 has been a wage paid on the basis of a contract negotiated between the local union, of which Gregory is a member, and Georgia-Pacific. The increase in wages has been an increase that applied to all other employees in his classification.
Gregory, on the other hand, testified he is presently able to perform his job with Georgia-Pacific and is also able to perform his duties as a constable in Winston County. Giles Ward testified for Georgia-Pacific that the company was entirely satisfied with claimant's work attendance. Dr. Emmett did not recommend placing any physical limitations on Gregory's work activities, but encouraged him to do what he feels like he can safely do.
Georgia-Pacific claims there is absolutely no proof that Gregory has suffered any industrial disability, or loss of wage earning capacity. "Generally, `medical' disability is the equivalent of functional disability and relates to actual physical impairment. `Industrial' disability is the functional or medical disability as it affects the claimant's ability to perform the duties of employment." Robinson v. Packard Electric Division, General Motors Corporation, 523 So.2d 329, 331 (Miss. 1988). According to Georgia-Pacific, there is absolutely no proof in the present case that Gregory has any industrial or occupational disability, or that he is impeded in his ability to perform the duties of his employment.
*1256 There is a well-established presumption in Mississippi workers' compensation law: "The actual post-injury earnings will create a presumption of earning capacity commensurate therewith and is strong evidence for consideration against a claim of disability out of proportion thereto, but the presumption may be rebutted by evidence independently showing incapacity or showing post-injury earnings as an unreliable basis for the determination." Factors that may be considered which rebut this presumption include, inter alia, an increase in general wage levels. Dunn, Mississippi Workers' Compensation, § 67, at p. 76 (3d ed. 1982); see also General Elec. Co. v. McKinnon, 507 So.2d 363, 365 (Miss. 1987).
Gregory points to the Commission's finding that his loss of wage earning capacity merited the smallest awardable amount under the Workers' Compensation Law for whole body impairment, i.e., $25.00 per week. He submits his loss of wage earning capacity should be affirmed on the basis of medical testimony, coupled with a description of the effects of Meniere's Syndrome as they ordinarily appear.
Dr. Emmett testified that Meniere's Syndrome affects activities of daily living, both occupationally and socially. He stated that dizziness or vertigo is a real subjective complaint. Dr. Emmett expressed no doubt whatever that Gregory "is dizzy on and off, all day" and attributed Gregory's work habits as a testimony to his character and motivation more than anything else. According to Dr. Emmett, Gregory would be at a disadvantage in an industrial setting where there are machines in operation. Dr. Emmett described the effects of Meniere's Syndrome as psychologically and emotionally disabling, plus the fact that dizziness and unsteadiness can be frequent and oftentimes unrelenting.
We cannot say the Commission incorrectly concluded that, despite Gregory's increase in wage earnings, his wage earning capacity and his employability in the market place has been reduced. The presumption of earning capacity commensurate with post-injury earnings is rebutted in this case by the following factors which strongly suggest that Gregory's actual post-injury earnings are a less reliable indicator of earning capacity:
1. Meniere's Syndrome is a whole body disability;
2. It is lifelong in nature;
3. Meniere's Syndrome affects the activities of daily living, both occupationally and socially;
4. Gregory's daily bouts with vertigo would put him at a disadvantage in an industrial setting where there are machines in operation;
5. One of Gregory's biggest fears is losing his balance and falling into one of the machines he is operating; and
6. There has been an increase in general wage levels for all employees in Gregory's class since 1984.
The decision of the Commission is not manifestly wrong and is supported by substantial evidence.

V.
The administrative judge found as a fact that Gregory was suffering from Meniere's Syndrome and that as a result of this rare condition Gregory "received a permanent partial disability to his body as a whole... ." Upon review, the full Commission found no error of fact or law. This Court's task, of course, is to determine whether or not the finding made by the Commission is supported by substantial evidence.
We need not look past the undisputed testimony of Dr. Emmett. Based upon claimant's "history of episodic vertigo, tinnitus, possible fluctuant hearing loss on the right, as well as the results of his inner ear function tests ...", Dr. Emmett, in February of 1987, identified Gregory's malady, for the first time, as Meniere's Syndrome/Disorder/Disease. He testified that Meniere's Syndrome "does affect the entire body," and that it is "an inner ear dysfunction that appears to be lifelong in nature."
Although Dr. Emmett testified there is no scale by which one could measure, in percentage form, the impairment Gregory has to the body as a whole, he stated, in no *1257 uncertain terms, that "psychologically, emotionally it can be quite disabling, plus the fact the dizziness and unsteadiness can be frequent and oftentimes unrelenting, plus oftentimes it leads to a progressive sensorineural hearing loss that we can't do anything about."
We hold the competent and undisputed medical testimony of Dr. Emmett provided substantial evidence of a rare and unusual disorder that involved, in addition to a loss of hearing, a balance dysfunction affecting the claimant's activities of daily living, both occupationally and socially. The record contains substantial evidence supporting the finding by the Commission that Gregory's impairment was a whole body injury as opposed to a schedule member injury only.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and ROBERTSON, PITTMAN, BANKS and McRAE, JJ., concur.
SULLIVAN, J., not participating.
NOTES
[1] § 71-3-7. Liability for payment of compensation.

Compensation shall be payable for disability or death of an employee from injury or occupational disease arising out of and in the course of employment, without regard to fault as to the cause of the injury or occupational disease. An occupational disease shall be deemed to arise out of and in the course of employment when there is evidence that there is a direct causal connection between the work performed and the occupational disease.