# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-WC-01464-COA

**JAMES CURRY, JR.**                                             **APPELLANT**

**v.**

**ASHLEY FURNITURE INDUSTRIES AND**             **APPELLEES**
**TRUMBULL INSURANCE COMPANY**

| | |
|---|---|
| DATE OF JUDGMENT: | 08/20/2019 |
| TRIBUNAL FROM WHICH APPEALED: | MISSISSIPPI WORKERS' COMPENSATION COMMISSION |
| ATTORNEY FOR APPELLANT: | JAMES CURRY, JR. (PRO SE) |
| ATTORNEY FOR APPELLEES: | J. ANDREW HUGHES |
| NATURE OF THE CASE: | CIVIL - WORKERS' COMPENSATION |
| DISPOSITION: | AFFIRMED - 05/12/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE J. WILSON, P.J., WESTBROOKS AND McDONALD, JJ.

### J. WILSON, P.J., FOR THE COURT:

¶1. In 2017, the Workers' Compensation Commission approved James Curry's request to settle his claim against his former employer, Ashley Furniture Industries, for a lump sum of $2,500. About nine months later, Curry filed a pro se motion asking the Commission to reopen his case and award additional benefits. He essentially alleged that his back injury was worse than he thought when he agreed to settle his claim. The administrative judge denied the motion, finding that Curry had not shown any change in conditions or mistake in a determination of any fact that would warrant reopening his case. The full Commission subsequently affirmed the administrative judge's ruling. We find no abuse of discretion and therefore affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     In February 2016, on his first day of work at Ashley, Curry allegedly injured his back while attempting to attach a spring to a sofa frame.  He reported the injury to his supervisor and the plant nurse and went to see Nurse Practitioner Teresa Stanford later that day.  Curry returned to work the next day, but he claimed that his back pain worsened progressively.  His pain did not respond to conservative treatment, and he saw Stanford again about a month later.  She ordered an MRI and put Curry on light-duty work.  She later told Curry that his MRI showed a "slipped disc."  She then ordered physical therapy and referred him to Columbus Orthopedic Clinic.

¶3.     Curry later testified that he told Ashley's "workers' comp lady" or the plant nurse that he had a "slipped disc."  According to Curry, the woman responded that he "already had prior back problems" before the incident.[1]  Curry then told the woman that his other injuries occurred "years ago," that this injury was different because it was a "slipped disc," and that he had never had a slipped disc before.

¶4.     At Columbus Orthopedic, Physician Assistant Jason Caswell prescribed physical therapy and pain injections, but Curry reported that his back pain continued to worsen.  In June or July 2016, Caswell recommended surgery because Curry's injections did not seem to be helping.  Curry told Caswell that he was "considering surgery but would like to think about it more and give [Caswell] a call back."  Caswell discussed surgery with Curry again

_____

[1] Curry suffered back injuries in 1997 and 1999 while working for prior employers. He received workers' compensation disability benefits, medical benefits, and a lump-sum compromise settlement following each injury.  He was also released to work and returned to work with no permanent restrictions following each injury.

later in 2016.

¶5.     In the meantime, in May 2016, Curry filed a petition to controvert seeking workers' compensation benefits for his back injury. Curry was represented by counsel. Ashley[2] filed an answer denying that Curry had sustained a compensable injury or was disabled because of any work-related injury. In September 2016, Curry's attorney filed a motion to withdraw because Curry had fired him. The administrative judge granted the attorney's motion. In November 2016, a second attorney entered an appearance on behalf of Curry. However, in January 2017, that attorney also filed a motion to withdraw because conflicts had arisen between her and Curry that could not be resolved. The attorney did not assert a lien for attorney's fees, and the administrative judge granted her motion to withdraw.

¶6.     On January 17, 2017, Curry and Ashley petitioned the Commission to approve a settlement of Curry's claim for a lump sum of $2,500. On January 25, 2017, the administrative judge approved the settlement. The judge's order noted that Ashley had not paid any medical or disability benefits to Curry because it disputed that he had suffered a compensable injury at work. The judge also noted that Curry was previously represented by two different attorneys and that both attorneys had recommended a settlement. The judge found that Curry knew and understood that the $2,500 payment was a "full compromise settlement" of any claims arising out of his alleged injury at Ashley. The judge also found that the settlement was in Curry's best interest. In a separate order, the judge granted Curry's first attorney's motion to withdraw his attorney's fee lien; thus, no attorney's fees were

_____

[2] We refer to Ashley and its workers' compensation insurance carrier collectively as "Ashley."

3

deducted from Curry's settlement.

¶7.     In October 2017, Curry filed a pro se motion asking the Commission to reopen his case and award additional benefits.  Curry claimed that he had agreed to settle his claim because he thought his back pain was only the result of a "pulled muscle" or a natural progression of his prior injuries.  He alleged that he did not understand the difference between a "pulled muscle" and a "slipped disc."  He claimed that a "Dr. Brown," a physician who treated him for back pain while he was incarcerated from July 2017 to April 2018,[3] first explained the difference to him.  He then filed his motion to reopen his case.

¶8.     Shortly after Curry was released from his incarceration, he sought treatment at North Mississippi Medical Center, complaining of "sharp pain" in his back.  Curry reported that the pain started "after he was incarcerated [a] few months [earlier] and had to sleep on [a] hard floor with no mat."

¶9.     Additional medical records introduced at the hearing on Curry's motion to reopen showed that Curry was also injured in a car wreck about six weeks after his alleged injury at work at Ashley.  On April 10, 2016, Curry was taken to the emergency room in Amory by ambulance on a stretcher.  He reported neck pain radiating to the left side of his body, pain in the base of his skull radiating down his back, and left arm and leg pain at a level of 8/10.  A CT scan showed a bulging degenerative disc at C4-C5, and Curry was diagnosed with acute neck pain, acute headache, epidural hematoma, and cervical disc degeneration.  A subsequent neurological consult noted the same herniated disc at L5-S1 that Caswell later

---

[3] In July 2017, Curry fled from police following a car wreck.  He was apprehended and then incarcerated from July 2017 to April 2018 for parole violations.

4

diagnosed. The risks and benefits of back surgery were discussed with Curry. However, Curry said he "not interested in surgery at [that] time." Pain medication and physical therapy were prescribed instead. Over the next several months, Curry continued to seek treatment from other healthcare providers—in addition to the treatment from Stanford and Caswell discussed above—for pain related to his April 2016 car wreck.

¶10. Following the hearing on Curry's motion to reopen his case, the administrative judge issued a thorough opinion discussing the procedural history of the case, Curry's medical history, and his present claims. The judge found that Curry's "allegation that [Ashley] 'brainwashed' him into minimizing his symptoms or somehow duped him into thinking that his symptoms were a continuation of his prior back strains" was contradicted by Curry's contemporaneous medical records and his own testimony. The judge also found that there was no relevant change in Curry's condition because the medical records did not show that his condition had worsened or that his pain had increased because of his alleged injury at Ashley. Therefore, the judge found that there had been no mistake in a determination of fact or change in condition and denied Curry's motion to reopen his case. Curry petitioned the full Commission for review, and the Commission affirmed the administrative judge's ruling in a one-page order. Curry then appealed.

**ANALYSIS**

¶11. Mississippi Code Annotated section 71-3-53 (Rev. 2011) authorizes the Commission to reopen a case under certain circumstances:

> Upon its own initiative or upon the application of any party in interest on the ground of a change in conditions or because of a mistake in a determination of

5

fact, the commission may, at any time prior to one (1) year after date of the last payment of compensation, whether or not a compensation order has been issued, or at any time prior to one (1) year after the rejection of a claim, review a compensation case . . . .

¶12. As the statute's language makes clear, "[t]he statute is not mandatory." *Ga.-Pac. Corp. v. Gregory*, 589 So. 2d 1250, 1254 (Miss. 1991). "Rather, it is discretionary with the [C]ommission whether or not it will reopen a case." *Id.* (quotation marks omitted). "So long as its discretion is not abused, this Court will not interfere." *Armstrong Tire & Rubber Co. v. Franks*, 242 Miss. 792, 799, 137 So. 2d 141, 144 (1962). That is, the Commission's "decision will be affirmed" if there is "any reasonable basis upon which [it] may have been justified." *Huey v. RGIS Inventory Specialists*, 269 So. 3d 362, 366 (¶14) (Miss. Ct. App. 2018) (quoting *Armstrong*, 242 Miss. at 799, 137 So. 2d at 144), *cert. denied*, 258 So. 3d 286 (Miss. 2018); *see also Smith v. CompFirst/L.C. Indus.*, 186 So. 3d 873, 877 (¶13) (Miss. Ct. App. 2015) ("[S]ection 71-3-53 does not create a right for any interested party to reopen a claim. This section instead gives the Commission *discretionary* authority to reconsider a claim." (citation omitted)), *cert. denied*, 186 So. 3d 854 (Miss. 2016).

¶13. In addition, we will not reverse the Commission's "findings of fact" unless they are "contrary to the overwhelming weight of the evidence." *Parker v. Ashley Furniture Indus.*, 164 So. 3d 1081, 1083 (¶11) (Miss. Ct. App. 2015) (quoting *Smith v. Johnston Tombigbee Furniture Mfg. Co.*, 43 So. 3d 1159, 1164 (¶15) (Miss. Ct. App. 2010)). "Because the Commission is the ultimate fact-finder and judge of the credibility of the witnesses, this Court may not reweigh the evidence before the Commission." *Gregg v. Natchez Trace Elec. Power Ass'n*, 64 So. 3d 473, 475 (¶8) (Miss. 2011). When, as in this case, the Commission

6

affirms the decision of the administrative judge without additional findings or analysis, we apply the same standard of review to the factual findings of the administrative judge. *Mabus v. Mueller Indus. Inc.*, 205 So. 3d 677, 682 (¶21) (Miss. Ct. App. 2016).

¶14.     In this case, the administrative judge's findings are supported by substantial evidence, and the Commission did not abuse its discretion by denying Curry's motion.  First, there is substantial evidence to support the judge's finding that there was no mistake of fact.  As the judge found, Curry's medical records show that *prior to Curry's decision to settle his claim*, Caswell and other medical providers "repeatedly discussed" with Curry "both his diagnosis of a ruptured disc and his option to elect surgery because of that diagnosis."  In addition, Curry testified that he specifically told Ashley's "workers' comp lady" or the plant nurse that he had a "slipped disc" that was different from his prior injuries.  As the judge found, this evidence directly contradicts Curry's claim that he was tricked into thinking that he had only a "pulled muscle" and had not suffered a new injury.  The record shows that Curry was thoroughly advised by medical providers and aware of the condition of his back prior to his decision to settle his claim.

¶15.     Second, there is also substantial evidence to support the judge's finding that there had not been any relevant change in conditions that would justify reopening the case.  Curry claimed that his back pain had worsened since the settlement, but his medical records do not show that any increase in pain is attributable to his alleged injury at Ashley.  Moreover, following his release from incarceration, Curry reported that his increased back pain began as a result of uncomfortable sleeping conditions during his incarceration.  Based on the

7

judge's findings, the Commission did not abuse its discretion by denying Curry's motion to reopen his case.

## CONCLUSION

¶16.    The administrative judge's findings of fact are supported by substantial evidence, and the Commission did not abuse its discretion by denying Curry's motion to reopen the case.

¶17.    **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, WESTBROOKS, TINDELL, McDONALD, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR.**